(54 App. Div. 271.)

## VENNER v. FARMERS' LOAN & TRUST CO.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

BANKS AND BANKING — LOAN AND TRUST COMPANIES — RIGHT TO RECEIVE DEPOSITS.

Laws 1822, c. 50, incorporated the Farmers' Fire Insurance & Loan Company, and provided that nothing in the act should be construed to authorize it to receive any deposit or deposits, or to exercise any banking privileges. Laws 1836, c. 211, changed the name of said corporation to the Farmers' Loan & Trust Company, and declared that nothing contained in the act should be construed to confer on the corporation any powers other than those conferred by the original act of incorporation; and Laws 1890, c. 433, conferred on the corporation, in addition to the powers already possessed, the power to take, accept, and execute all trusts of every description. Laws 1892, c. 689, § 163, conferred on every trust company incorporated by special law the powers of trust companies incorporated under said banking law; and section 156 authorized trust companies formed under the banking act to receive deposits of trust moneys and securities. Held, that the defendant trust company had the right to receive deposits, since by the act of 1892 it became a trust company incorporated by special law, and entitled to the benefit of the provisions of the banking act, and the prohibition in the original act of incorporation against receiving deposits was thereby annulled.

Appeal from special term, New York county.

Action by George L. Venner against the Farmers' Loan & Trust Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

John W. Hutchinson, for appellant.
David McClure, for respondent.

O'BRIEN, J. The plaintiff on or about the 18th day of May, 1899, became the holder of record of 100 shares of the capital stock of the Farmers' Loan & Trust Company; and on the 1st day of August, 1899, he brought this action to restrain it from receiving any deposit and in any way engaging in a banking business, alleging that the

exercise of such functions is ultra vires. This allegation is denied by the answer, and it thus becomes necessary, besides examining the facts here appearing, to briefly review the legislation conferring powers upon the corporation.

The capital stock of the defendant company is $1,000,000, and it in no way appears that any other stockholder is in sympathy with the effort of the plaintiff to restrain the defendant from carrying on what must be regarded as a lucrative part of its business. Whatever may be the plaintiff's motive in instituting such an action, it is clear that the suit is not for the purpose of promoting the interest of the other stockholders or the welfare of the corporation; and a court of equity might well hesitate to grant injunctive relief in a case wherein neither public nor private interests are to be protected. Passing, however, the question of plaintiff's motive, and coming to the consideration of the legal question involved, there remains for our determination the issue tendered by the pleadings,—as to whether the business complained of is being conducted by the defendant corporation contrary to law and the provisions of its charter.

The defendant company was incorporated by special act on February 28, 1822 (chapter 50, Laws 1822), under the name of the Farmers' Fire Insurance & Loan Company; and in the charter it was expressly stated—

"That nothing in this act shall be so construed as to authorize the said corporation to receive any deposit or deposits nor * * * allow any banking privileges or business whatever."

By chapter 240, Laws 1822, the powers of the corporation were increased so as to permit it—

"To receive and take, by deed or devise, any effects and property both real and personal, which may be left or conveyed to them in trust, * * * but it is expressly declared, that the privileges hereby granted to the said corporation for receiving trusts, are solely for the purposes of the protection of property so conveyed to them and not for the purpose of aiding or promoting any traffic. * * * Any such trust estate so conveyed as aforesaid, shall not be applied, used, or appropriated * * * for banking purposes, but shall be confined and solely applied to the purposes and intents of such trust."

In 1836, by chapter 211 of the Laws of that year, it was enacted that:

"The corporation heretofore known by the name of 'The Farmers' Fire Insurance and Loan Company,' shall hereafter, be known by the name and style of 'The Farmers' Loan and Trust Company.' "

The act further prescribed methods of election, etc., and provided that:

"Nothing contained in this act shall be construed to confer upon this corporation any powers other than those conferred upon them by the original act of incorporation and the act amending the same passed April 17, 1822, except in relation to the change of its name and election and classification of directors."

In 1850, by chapter 112 of the Laws of that year, sales made by this company were confirmed, and by chapter 216 of the Laws of 1860 the amount of stock of the corporation was reduced. By chapter 217 of the Laws of 1875, which was subsequently amended by chapter 277 of the Laws of 1880, and by chapter 433 of the Laws of 1890, its

powers as to trusts were increased. The latest enactment (chapter 433, Laws 1890) provides that the corporation—

"In addition to the powers already possessed [conferred by ·the original charter and the subsequent amendments] shall have power to take, accept and execute all such trusts of every description as may be committed to said company by any person or persons, or any corporation by grant, assignment, devise or bequest or which may be committed or transferred to or vested in said company by order of the supreme court or by a surrogate or any of the courts of record and to receive and take any real estate. which may be subject to any such trust."

By section 163 of the banking law (chapter 689, Laws 1892) it is provided:

"Every trust company incorporated by a special law, shall possess the powers of trust companies incorporated under this chapter and shall be subject to .such of the provisions of this chapter as are not inconsistent with the special laws relating to such specially chartered company."

And section 156 specifies the powers of trust companies formed under the act, which include the right—

"To receive deposits of trust moneys, securities and other personal property from any person or corporation, and to loan money on real or personal securities."

A trust company, when so used in this chapter, is defined by section 2 to mean—

"Any domestic corporation formed for the purpose of taking, accepting and executing such trusts as may be lawfully committed to it and acting as trustee in the cases prescribed by law, and receiving deposits of moneys and other personal property and issuing its obligations therefor, and of loaning money on real or personal securities."

Evidently, it is not necessary that the defendant company should have possessed, previous to this enactment, power to receive deposits or engage in extended banking business, to obtain the benefits of the act. Although upon its incorporation such privileges were expressly denied it, and were not granted when the name was changed thereafter by the law of 1875, as amended by that of 1880 and again by that of 1890, the power to receive and execute trusts was given, so that it was in 1892 a "trust company incorporated by a special law," and entitled to receive the benefits of, and be governed by, the banking law. The entire argument of the appellant is built upon the limitations in the original charter of this company, which contained an express prohibition against the receipt of deposits. If the defendant's present status and rights were to be measured by its original charter alone, the argument of appellant against its right to receive deposits or do a general trust-company business would prevail. By the amendments, however, to that charter, which changed the name and extended the powers of the defendant, we think it clear that it was a trust company at the time of the passage of the banking act. The intent and scope of the banking law are quite apparent; the purpose being to bring all companies doing a trust-company business, as well as banks, under the state banking department, and, by requiring them to make and file reports of their condition at stated times, to subject them to the same supervision, direction, and control as that department had a right to exert over banks and other moneyed insti-

tutions. While, therefore, the purpose was to impose upon all com-
panies which, through special charters, had obtained the right to do
a trust-company business, the same burdens and obligations as trust
companies formed under the general act, at the same time there were
conferred upon such specially chartered corporations the same rights
and privileges as were given to trust companies formed under the gen-
eral act. This, we take it, is the scope of section 163 of the banking
law, already quoted; and the concluding language of the section,
that they (meaning trust companies) "shall be subject to such of the
provisions of this chapter as are not inconsistent with the special
laws relating to such specially chartered companies," was not in-
tended to deprive specially chartered companies of the privilege of
doing a general trust-company business, but was intended to save
rights conferred by special charters. In other words, in making them
subject to the provisions of the banking law it imposed all the bur-
dens and obligations which rested upon companies formed under the
general act, while at the same time conferring upon them the same
rights and privileges which such companies possessed, and saving such
specially granted powers as were given by special charters, and which
were not inconsistent with the provisions of the banking law.

We think, therefore, that the judgment of the special term was
right, and that it should be affirmed, with costs. All concur.