(55 Misc. Rep. 355.)

COLBY v. EQUITABLE TRUST CO. OF NEW YORK et al.

(Supreme Court, Special Term, New York County. July, 1907.)

1. CORPORATIONS—MERGER—RIGHTS OF MINORITY STOCKHOLDER.

Where two corporations having common directors enter into a contract of merger, which is ratified by the majority of the stockholders, it may be declared void on the objection of a minority stockholder, if such ratification was induced by fraud or in disregard of his rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2343.]

2. SAME—INJUNCTION.

Where two corporations having common directors agree as to a merger, and it cannot be properly ratified against the objection of a dissenting stockholder, the merger will be enjoined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2346.]

**3. SAME.**

A certain corporation earned 6 per cent. per annum for four years on the book value of its stock. Another corporation earned twice as much. It was proposed to merge the same; the amount of capitalization to be furnished by each company being approximately the same. The stockholders of the first company were offered only one-half the amount of stock offered to those of the other company, resulting in a loss in the book value of the former, and compelling its stockholders to forego the possibility of receiving on their stock more than one-half of what the stockholders of the other company would receive. Nine of the directors of the first company were directors in the second, and three of the latter directors of an insurance company which held 49 per cent. of the stock of one of the companies proposed to be merged, and 67 per cent. of the other, and all voted in favor of the merger. *Held*, in an action by a stockholder of the first corporation, who was also a policy holder in the insurance company, the merger would be enjoined, though not tainted with fraud, as unfair to plaintiff and his fellow stockholders.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2346.]

**4. SAME—REMEDIES OF STOCKHOLDER.**

Banking Law, Laws 1895. p. 222. c. 382, § 36, providing that on a merger of two corporations any dissenting stockholder may, within 60 days "after the merger takes effect," apply for appraisers and receive the value of his stock from the new company, does not prevent the court in a proper case from enjoining the merger at the suit of a stockholder; such remedy not being open to him until the merger is complete, and not being exclusive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2346.]

Action by Bainbridge Colby against the Equitable Trust Company of New York and the Mercantile Trust Company. Motion for an injunction granted.

Ivins, Mason, Wolff & Hoguet (William M. Ivins, William N. Cohen, Herbert D. Mason, and Benjamin N. Cardozo, of counsel), for plaintiff.

Cravath, Henderson & Degersdorff (Paul D. Cravath and Carl A. Degersdorff, of counsel), for defendant Equitable Trust Co.

Alexander & Green (Allan McCulloch, of counsel), for defendant Mercantile Trust Co.

BLANCHARD, J. This is an application for an order restraining the defendants from taking any further steps toward completing a proposed merger between the defendant the Equitable Trust Company of New York and the defendant the Mercantile Trust Company. The present action is brought by a stockholder of the Equitable Trust Company, who also alleges that he is a policy holder of the Equitable Life Assurance Society of the United States, which holds among its assets 14,531 shares of stock of the Equitable Trust Company. An injunction is prayed for against the defendants to restrain the completion of their proposed merger on the ground that the proposed terms of merger authorized by the directors of the defendants, and proposed to be submitted for action at a meeting of the stockholders of the Equitable Trust Company, are calculated unlawfully to injure the rights of the plaintiff and other minority stockholders and the Equitable Life Assurance Society, of which the plaintiff is a policy holder.

The Equitable Trust Company has a capital stock of $3,000,000, and a surplus and undivided profits amounting to $10,212,117.50, making a total of $13,212,117.50. The book value of a share of its stock, according to the answering affidavit of Mr. Krech, the president of the Equitable Trust Company, is approximately $440 a share. Mr. Krech states that the approximate cost of liquidating the company would reduce by about $10 the book value of each share of stock. Accordingly, he regards the sum of $435, which is stated in the proposed terms of merger as the book value of each share of stock, to be a fair valuation for the purposes of merger. He further shows that the earnings of the Equitable Trust Company, for the four years beginning 1903 and extending through 1906, computed upon the basis of the book valuation of $435 per share, averaged 6.06 per cent. a year.

The Mercantile Trust Company has a capital stock of $2,000,000, and a surplus and undivided profits amounting to $6,986,861.85, making a total of $8,986,861.85. The book value of a share of its stock, according to Mr. Krech, is $452. From the same source it appears that the average earnings of the Mercantile Trust Company, during the four years beginning 1903 and extending through 1906, have been 11.52 per cent., upon the basis of the book value of the stock.

The plan of the proposed merger, to which the plaintiff objects, contemplates the merger of the Equitable Trust Company into the Mercantile Trust Company; the name of the merged company to be the Mercantile Trust Company, and the capital stock of the said company to be increased from $2,000,000 to $3,000,000. The stockholders of the Equitable Trust Company, at their option, may exchange two shares of their stock for one share of stock of the merged company, or may receive for each share of their present holdings $435 in cash. The stockholders of the Mercantile Trust Company may exchange their stock, share for share, for the stock of the merged company.

The meeting of the board of directors of the Equitable Trust Company, consisting of 32 members, at which the proposed merger agreement was authorized, was held on June 13, 1907, and was attended by 20 members of the board. Nine of such directors are also directors of the Mercantile Trust Company. Three other directors, who were present at the meeting, are officers of the Equitable Trust Company. The resolution authorizing the merger agreement was unanimously adopted.

At a meeting of the directors of the Mercantile Trust Company held upon the same day the nine directors above referred to attended and voted in favor of the resolution authorizing said merger agreement.

The Equitable Life Assurance Society, it may be noted, holds about 49 per cent. of the stock of the Equitable Trust Company and about 67 per cent. of the stock of the Mercantile Trust Company. Three of the nine directors of the Equitable Trust Company and the Mercantile Trust Company above referred to are also directors of the Equitable Life Assurance Society.

At the outset the defendants suggest that the plaintiff has an adequate remedy under section 36 of the banking law (Laws 1895, p. 222, c. 382), and consequently should not be granted the relief prayed for upon this motion. The section provides that, in the event of a merger

of two or more corporations; any dissenting stockholder may, within 60 days after the merger takes effect, apply for the appointment of appraisers and receive from the merged company, in cash, the value of his stock thus appraised. In the present case the merger has not yet been effected. This remedy, therefore, is not yet open to the plaintiff. Furthermore, it seems that the remedy afforded by section 36 of the banking law is not exclusive, and does not prevent the court in a proper case from granting relief by injunction. Langan v. Francklyn, 29 Abb. N. C. 102, 113, 20 N. Y. Supp. 404.

A contract made between two corporations having common directors is not absolutely void, but in a proper case and upon the objection of either corporation may be declared void by a court of equity. Burden v. Burden, 159 N. Y. 287, 307, 54 N. E. 17; Continental Ins. Co. v. N. Y. & H. R. R. Co., 187 N. Y. 225, 238, 79 N. E. 1026; Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 277, 26 N. E. 145. Compare Munson v. Syracuse, Geneva & Corning R. R. Co., 103 N. Y. 58, 74, 8 N. E. 355. Similarly, such a contract, even though it has been ratified by the majority of the stockholders, may be declared void upon the objection of a minority stockholder, if the circumstances show that such ratification was induced by fraud or obvious disregard of the rights of minority stockholders. Gamble v. Queens County Water Co., 123 N. Y. 91, 98, 99, 25 N. E. 201, 9 L. R. A. 527; Farmers' Loan & Trust Co. v. New York & Northern R. R. Co., 150 N. Y. 410, 434, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; Continental Insurance Co. v. N. Y. & H. R. R. Co., supra; Oelbermann v. New York & Northern R. R. Co., 7 Misc. Rep. 352, 357, 27 N. Y. Supp. 945; Robotham v. Prudential Ins. Co., 64 N. J. Eq. 673, 709, 53 Atl. 842. This principle was well stated by Judge Peckham in Gamble v. Queens County Water Co., 123 N. Y. 91, 98, 99, 25 N. E. 201, 202, 9 L. R. A. 527, as follows:

"Their action (i. e., the action of the stockholders' meeting) resulting from such votes must not be so detrimental to the interests of the corporation itself as to lead to the necessary inference that the interests of the majority of the shareholders lie wholly outside of and in opposition to the interests of the corporation and of the minority of the shareholders, and that their action is a wanton or fraudulent destruction of the rights of such minority. In such cases it may be stated that the action of the majority of the shareholders may be subjected to the scrutiny of a court of equity at the suit of the minority shareholders. * * * I think that where the action of the majority is plainly a fraud upon, or, in other words, is really oppressive to, the minority shareholders, and the directors or trustees have acted with and formed part of the majority, an action may be sustained by one of the minority shareholders, suing in his own behalf and in that of all others coming in, etc., to enjoin the action contemplated, and in which action the corporation should be made a party defendant. * * * To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests."

From the doctrine thus laid down it follows that the injunction prayed for upon this motion must be granted if the proposed merger

agreement of the defendant corporations is such that it cannot conscionably be ratified against the objection of a dissenting stockholder. The terms of the proposed merger agreement must be examined in the light of the principle above stated.

The capital, surplus, and undivided profits of the Equitable Trust Company aggregate $13,212,117.50. According to the proposed merger agreement, $1,000,000 of the capital stock must be retired in order to effect the merger. It is understood that the retirement of such stock is assured by the announced intention of the Equitable Life Assurance Society to retire $1,000,000 of stock which it now holds. The payment for the stock thus retired will diminish the aggregate capital and surplus above mentioned in the sum of $4,350,000. For the purposes of the merger, therefore, the capitalization of the Equitable Trust Company may be regarded as approximately $9,000,000. The capital, surplus, and undivided profits of the Mercantile ·Trust Company aggregate $8,986,861.85. For the purposes of the merger, therefore, the capitalization of the Mercantile Trust Company may be regarded as substantially equal to the capitalization which the Equitable Trust Company proposes to contribute to the merged company. The present book value of the stock of the Equitable Trust Company is conceded by Mr. Krech to be $440 per share. The stockholders of that company who exchange two of their shares for one of the merged company will give up two shares of the aggregate book value of $880 and receive in exchange therefor one share in the merged company of a book value, estimated by Mr. Krech, of $600. At the outset, therefore, there appears to be an apparent loss in book value of $140 for each share of stock which the stockholders of the Equitable Trust Company exchange pursuant to the merger agreement.

The argument in favor of the merger which is made to the stockholders of the Equitable Trust Company by the Mercantile Trust Company and by the promoters of the proposed merger may be stated substantially as follows: The Equitable Trust Company upon its capitalization has been able during the last four years to earn only 6.06 per cent. per annum. The Mercantile Trust Company upon its capitalization has been able during the same period to earn 11.52 per cent. per annum. The amount of capitalization which each company purposes to contribute to the merged company is approximately the same. The Mercantile Trust Company, however, has been able to earn upon its capitalization almost double the per cent. that the Equitable Trust Company has earned. For this reason the stockholders of the Equitable Trust Company are offered for their contribution to the merged company only $1,000,000 of stock, while the stockholders of the Mercantile Trust Company, for an equal contribution, are offered $2,000,000 of stock. In bald terms, the promoters of the merger announce that the money of the Equitable Trust Company is only half as valuable as an equal amount of money of the Mercantile Trust Company, and propose a partnership upon the basis of equal contributions of money, but a division of the interest of the business in the ratio of one to two.

Such an arrangement, it is conceded, is not uncommon between individuals, where the skill, experience, and good will of one is deemed equal to the amount of the capital of the other, and both contribute an equal amount of capital. Good will is an asset, a piece of property. People ex rel. Johnson Co. v. Roberts, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126; Lindemann v. Rusk, 125 Wis. 210, 104 N. W. 119, 126; Washburn v. Nat. Wall Paper Co., 81 Fed. 17, 26 C. C. A. 312. Furthermore, good will is an element of the property of a corporation which contributes to the value of a share of the corporate stock. Compare People ex rel. Union Trust Co. v. Coleman, 126 N. Y. 433, 438, 27 N. E. 818, 12 L. R. A. 762.

It is not inconceivable that two corporations having equal amounts of capital might be so situated that the item of good will in the case of one equaled its capital, while the other corporation really had no good will and no asset other than its actual capital. In the instance of such corporations it might well be held that a merger upon terms similar to those proposed in the present case might be entirely fair to the stockholders of both corporations, provided that the merged corporation seemed likely to earn more upon the capital contributed by the less prosperous corporation than that corporation had hitherto earned. The justification for such a merger, from the standpoint of the stockholders of the less prosperous corporation, would consist in the probability of a greater return upon their capital, when combined with that of the more prosperous corporation; and the greater return thus attained might overbalance the inconvenience and disadvantage which the stockholders of the less prosperous corporation would suffer by yielding up the control over their capital to the stockholders of the more prosperous corporation and assuming the position of a minority interest in the merged corporation, outnumbered two to one by the stockholders of the more prosperous corporation. Such an arrangement, it is repeated, might well be held proper and fair to all parties.

The proposed merger of the defendant corporations, however, is not analogous to the arrangement just mentioned. The prospective earnings of the merged corporation, as announced by Mr. Krech in the letter to the stockholders of the Equitable Trust Company recommending the merger, are as follows:

The average annual net earnings of the Mercantile Company for
the years 1903, 1904, 1905, and 1906 were....................$  956,858 45
Estimated earnings of 4 per cent. on approximately $9,000,000 of
additional capital and surplus to be acquired from the Equitable Trust Company.........................................   360,000 00
Estimated profits on deposits and other business to be taken over
(say) ..................................................   150,000 00
                                                          _____
Total estimated annual net earnings of the merged company....$1,466,858 45

Upon analysis it appears that the promoters of the merger hope to earn upon a capitalization contributed by the Mercantile Trust Company the same per cent. that that company has earned during the past four years; but upon the capitalization contributed by the Equitable Trust Company they hope to earn somewhat less than that company

has proved itself able to earn during the past four years without the assistance of the Mercantile Trust Company. In other words, the merged corporation does not pretend to be able to earn upon the capitalization contributed by the Equitable Trust Company as much as that company, under the management of its own stockholders, has earned upon an average during the past four years. Nevertheless, the promoters of the merger ask that the stockholders of the Equitable Trust Company give up to the merged corporation their control over their investment, and forego once and forever the possibility of ever receiving upon their investment more than half of what the stockholders of the Mercantile Trust Company receive upon an equal investment, and accept, in place of the earnings which the experience of the past four years has proved that the Equitable Trust Company can earn, a somewhat less amount of potential, prophesied, and estimated earnings, based, not upon fact or experience, but upon the prophecy and estimate of the promoters of the merger.

Thus far the examination of the proposed merger agreement has been confined to the prospect held out to the plaintiff and his fellow stockholders of the Equitable Trust Company. They are promised no more than their investment has earned while in their own control, and that promise is made payable in earnings based upon expectation, rather than upon experience. In consideration of this exchange of earnings based upon past performance for an equal amount of earnings based only upon future contingencies the stockholders of the Equitable Trust Company are further asked to give over the complete control, which they now exercise over their investment, to a new corporation in which they will be a hopeless minority, outnumbered two to one. It is not difficult for the court to perceive that the latter end of the stockholders of the Equitable Trust Company may, in such an event, be worse than their present condition.

The considerations above mentioned are sufficient to characterize the proposed merger agreement as apparently unfair. The obvious advantage to the present stockholders of the Mercantile Trust Company is clear. They will receive, as an addition to their capital, an amount equal to their present capitalization. They will control the increased amount of capital by a majority of two to one, and will receive, as compared with the stockholders of the Equitable Trust Company, a return upon their investment in the proportion of two to one. Under certain circumstances the court would be justified in shutting its eyes to the advantage which the other party to a merger might receive and consider merely whether the plaintiff and his fellow stockholders actually suffered a positive disadvantage by the merger. In this case, however, the disadvantage to one party is so apparent and the advantage to the other party is so clear that the court is obliged to give some weight to this circumstance.

The examination to which the court has subjected the proposed merger has been especially close, and the strictures which it has made upon it have been particularly definite, because of the close interrelation of the defendant corporations, having nine directors in common, and also because of the virtual domination of both corporations by a single stockholder, the Equitable Life Assurance Society. Under the

authority of the decisions above mentioned it is the duty of a court of equity under such circumstances to scrutinize with vigilant care a contract between two corporations, especially when the contract has the effect of extinguishing the corporate life of one of the contracting parties. The court is not convinced that the proposed merger agreement was conceived in fraud. It is not prepared to say that the agreement is one which, if entered into by two corporations not so interrelated as the defendants or dominated by a single interest, would necessarily and as a matter of course be held so unfair as to be unconscionable. It holds, however, that under all the circumstances here presented an agreement is proposed which is so unfair to the interests of the plaintiff and his fellow stockholders that a court of equity may well hesitate before denying a prayer for interposition.

An interim injunction has already been granted herein. Under the circumstances above outlined the duty of the court is plain. The rule was stated by Judge Finch, in Young v. Rondout & Kingston Gaslight Co., 129 N. Y. 57–60, 29 N. E. 83, 84, as follows:

"To dissolve an injunction, with the inevitable result of defeating plaintiff's remedy without a trial, we must be entirely satisfied that the case is one in which by settled adjudication the plaintiff upon the facts stated, is not entitled to final relief. We cannot say that of this plaintiff's complaint in advance of a trial. * * * These are grave and serious questions. On this motion we ought not to decide them."

See, also, Hudson River Telephone Co. v. Watervliet Turnpike & R. R. Co., 121 N. Y. 397, 24 N. E. 832; Weston v. Goldstein, 39 App. Div. 661, 57 N. Y. Supp. 311; Cornwall v. Sachs, 69 Hun, 283, 23 N. Y. Supp. 500; Hart v. Ogdensburgh & L. C. R. Co., 20 N. Y. Supp. 918, 66 Hun, 628; Litchfield v. City of Brooklyn, 10 Misc. Rep. 74, 31 N. Y. Supp. 151.

Unless the statu quo of this case can be preserved, the relief which the plaintiff prays for, and which upon the trial he may prove to be entitled to, will be irrevocably lost by reason of the merger of the defendant corporations and the extinction of the Equitable Trust Company. Since the reasons hereinbefore discussed seem controlling upon this motion, it becomes unnecessary to discuss the other points raised by the plaintiff. Accordingly the motion for an injunction is granted.

Motion granted.