COLBY v. EQUITABLE TRUST CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 14, 1908.)

1. BANKS AND BANKING—TRUST COMPANIES—SPECIAL CHARTERS—CONSOLIDA-
TION.

Under Banking Law, Laws 1892, p. 1913, c. 689, § 163, providing that
trust companies incorporated by special laws shall possess the powers of
trust companies incorporated under the general laws, and shall be sub-
ject to such provisions of the banking law as are not inconsistent with the
special laws, companies created by special acts in 1868 and 1871 (Laws
1868, p. 1807, c. 806, and Laws 1871, p. 1304, c. 604), and empowered by
subsequent special acts (Laws 1873, p. 1269, c. 845, and Laws 1896, p.
1111, c. 839) to execute trusts, are subject to the provisions of the bank-
ing law, and a merger of such specially chartered companies is authorized
by sections 34–38, c. 582, pp. 221–224, Laws 1895, permitting merger of
trust companies, though such merger was unlawful when such specially
chartered companies were formed.

2. CORPORATIONS—ALTERATION OF CHARTER.

The state cannot confiscate the property of a corporation or deprive it
of its vested property rights, but may change or destroy the corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
128.]

3. BANKS AND BANKING—TRUST COMPANIES—CONSOLIDATION.

Under the reserved power of the state to alter or repeal corporate char-
ters (Const. art. 8, § 1, Rev. St. [1st Ed.] pt. 1, c. 18, tit. 3, § 8), the enact-
ment of Banking Law, Laws 1895, pp. 221–224, c. 382, §§ 34–38, au-
thorizing the merger of trust companies, is a valid exercise of legislative
power, as applied to specially chartered trust companies existing at the
time of its enactment.

4. CORPORATIONS—RIGHTS OF STOCKHOLDERS AS TO CORPORATION.

A court of equity will not interfere in the management of a corporation
on the complaint of a minority stockholder unless it is based on some il-
legal or unauthorized act of the majority to his prejudice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§
665–673.]

5. SAME—CONSOLIDATION—MERGER AGREEMENT—CORPORATIONS HAVING DI-
RECTORS IN COMMON.

A merger agreement between corporations having officers and directors
in common will be scrutinized with care for the purpose of ascertaining
whether it is fair to stockholders or not, but such an intermingling of
interests does not necessarily render the agreement void or so manifestly
unjust that a court of equity will enjoin its execution when ratified by the
requisite number of stockholders.

6. SAME—FAIRNESS OF AGREEMENT AS TO STOCKHOLDERS.

A merger agreement providing for the exchange of two shares of
stock in a company earning annually 25 per cent. of each share, with much
uncertainty as to its future earnings, for one share in a company which
can reasonably be expected to earn annually 48 per cent. on each share,
cannot be said to be so unconscionable and unfair to stockholders in the
former company as to justify a court of equity in restraining the carrying
out of the proposed merger, especially when the agreement is approved by
a majority of the stockholders of the company.

7. SAME—GOOD WILL.

A merger agreement is not necessarily unfair to stockholders because
no allowance is made therein for the good will of the company whose as-
sets are to be transferred to the merged company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§
2330–2337.]

**8. SAME—DISSOLUTION—INJUNCTION.**

    A stockholder cannot enjoin the liquidation of a corporation where the proceedings are taken in good faith, in accordance with the statute, with the approval of a majority of the stockholders.

**9. SAME—RIGHTS OF STOCKHOLDERS AS TO CORPORATION.**

    Every stockholder of a corporation holds his stock subject to the execution of all the powers conferred by law upon the corporation, and he must abide by the decision of the directors or stockholders upon all matters which the law commits to their control and determination.

**10. SAME—CONSOLIDATION.**

    A stockholder cannot enjoin the execution of a proposed merger agreement which is intra vires, and approved by a majority of the stockholders, unless fraud or oppression or unfairness is shown.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2343–2347.]

**11. APPEAL AND ERROR—INJUNCTION PENDENTE LITE.**

    On appeal from an order granting an injunction pendente lite, the order will not be affirmed for the purpose of preserving the status quo until after the trial of the action, where there is no dispute as to the facts alleged in support of the injunction, and the legal questions involved can be as well determined on the appeal as at the close of the trial.

Appeal from Special Term, New York County.

Action by Bainbridge Colby, a stockholder of the Equitable Trust Company of New York, on his own behalf and on behalf of other stockholders, against said Equitable Trust Company of New York and another. From an order (55 Misc. Rep. 355, 106 N. Y. Supp. 801) granting an injunction during the pendency of the action, defendants appeal.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles F. Brown, for appellants.
William M. Ivins, for respondent.

McLAUGHLIN, J. The plaintiff, a stockholder of the Equitable Trust Company of New York, brings this action in equity on his own behalf and on behalf of all other stockholders of that corporation to enjoin its proposed merger with the defendant, the Mercantile Trust Company, mainly upon the ground that such merger is illegal and unfair to the plaintiff. After the commencement of the action, upon notice, he applied for and obtained an order restraining the defendants and their officers and agents, during the pendency of the action, from taking any further steps towards carrying out the proposed merger. The defendants appeal from this order.

The proposed merger is attempted under sections 34–38 of the banking law (chapter 689, p. 1842, Laws 1892; chapter 382, pp. 221–224, Laws 1895, as amended). Section 34 provides that:

    "Any two or more corporations, other than savings banks, organized under any one article of this chapter, or organized under the laws of this state for the purposes, or either of them, mentioned in any one article of this chapter, are hereby authorized to merge one or more of said corporations into another in the manner following. * * *"

The contention that the proposed merger is illegal is based substantially upon two propositions:

First. (a) That neither the Equitable Trust Company, nor the Mercantile Trust Company, was "organized under any one article of this chapter"; (b) that neither of them were "organized under the laws of this state for the purposes, or either of them, mentioned in any one article of this chapter." The Equitable Trust Company was incorporated under chapter 604, p. 1304, Laws 1871, under the name of the "Traders' Deposit Company," with powers, among other things, to receive upon deposit money, certificates, and evidences of debt or value, and contracts, and to take the management, custody, and charge of the same, and to advance moneys, securities, and credits upon the same at such rates of interest—not exceeding the legal rate—and upon such terms and conditions as may be agreed upon by the parties. In 1896 (chapter 839, p. 1111, Laws 1896), the Legislature further authorized it "to have all the rights, powers and privileges conferred upon trust companies by section one hundred and fifty-six of an act entitled 'An act in relation to banking corporations' and known as the banking law." The name of the corporation was changed in 1895 (Laws 1895, p. 328, c. 557), and again by special act of the Legislature was changed in 1902 (chapter 290, p. 845) to the Equitable Trust Company of New York. The Mercantile Trust Company was incorporated by special act of the Legislature in 1868 (chapter 806, p. 1807) under the name of "Fire-Proof Warehousing Company." Its powers were thereafter increased by special acts, and in 1873 its name was changed (chapter 845, p. 1267) to the "Mercantile Trust Company," and it was empowered "to accept and execute all such trusts of every description as may be committed to it by any person or persons whatsoever, or by any corporations." Neither of the defendants was organized under any one article of the banking act—each having been organized by special act of the Legislature—but that they come fairly within the provisions of that act, and are subject thereto, cannot be seriously doubted when section 163 (chapter 689, p. 1913, Laws 1892) is read in connection with and other sections. This section provides that:

"Every trust company incorporated by a special law shall possess the powers of trust companies incorporated under this chapter and shall be subject to such provisions of this chapter as are not inconsistent with the special laws relating to such specially chartered company."

In Venner v. Farmers' Loan & Trust Co., 54 App. Div. 271, 66 N. Y. Supp. 773, affirmed 176 N. Y. 549, 68 N. E. 1125, it was held that under this section a company incorporated by special act in 1822 with no banking privileges, but which has subsequently acquired power to execute trusts, was subject to the provisions of the banking law, and might receive deposits, though such power was expressly withheld in its original charter.

Second. That the Legislature had no power to sanction the merger of corporations against the protest of minority stockholders unless such merger were lawful when the corporations were formed. But the Legislature has the right at any time it sees fit to alter, suspend, and repeal the charters of corporations. Rev. St. (1st Ed.) pt. 1, c. 18, tit. 3, § 8. This right is reserved to the Legislature by the Constitution. Article 8, § 1, Const. The Legislature, of course, cannot confiscate property, but it is under its fist that the corporation comes into exist-

ence; and the power which creates may thereafter change or destroy. People ex rel. Cooper Union v. Gass, 190 N. Y. 323, 83 N. E. 64; Mayor v. Twenty-Third St. Ry. Co., 113 N. Y. 311, 21 N. E. 60; Lord v. Equitable Life Assur. Soc., 109 App. Div. 252, 96 N. Y. Supp. 10. The extent and effect of the legislative reservation of the right to alter or repeal corporate charters was discussed in Hinckley v. Schwarzschild & S. Co., 107 App. Div. 470, 95 N. Y. Supp. 357. There the plaintiff sought to restrain the defendant corporation from issuing preferred stock and subordinating the existing stock to the payment of capital and dividends thereon. At the time the defendant was organized, unless provided for in the certificates of incorporation, preferred stock could be issued only with the unanimous consent of the stockholders. Under chapter 354, p. 961, Laws 1901, power was given a corporation to issue preferred stock upon consent of the holders of two-thirds of the stock, and defendant sought to issue preferred stock in accordance with this statute. The court held that the act was a valid exercise of legislative power, applied to corporations existing at the time of its passage, and that a minority stockholder could not prevent the issue of such stock. In so far as the right of a corporation to exist is concerned, as well as over the exercise of such powers as can only be exercised by it as an existing corporation, the state has absolute control under its reserve power. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684. It cannot, however, confiscate the property of the corporation, or deprive it of its vested property rights. Rochester & C. Turnpike R. Co. v. Joel, 41 App. Div. 43, 58 N. Y. Supp. 346.

Here the merger of the Equitable Trust Company, if the merger be permitted to take place, will result in the extinction of that corporation, and the transfer of its assets to the new corporation, but its property is not confiscated, nor is the corporation deprived of vested property rights. The property is sold to the merged corporation upon the terms provided in the merger agreement, and ample provision is made under the statute authorizing the merger by which any stockholder who is unwilling to assent to the terms can obtain the value of his stock in cash. The act provides that any stockholder who does not agree to the terms of the merger agreement may object to it and demand payment of his stock, and, if not paid, he may apply to the Supreme Court for the appointment of three appraisers to fix and determine the value of his stock, and the expenses of such determination have to be borne by the corporation itself. When the plaintiff became interested in the Equitable Trust Company, he did so with full knowledge of the fact that the statute commits to the majority stockholders the right to select its officers, dictate its policy, and control its management. If the acts of the majority do not meet with his approval, he has no legal ground of complaint, unless he can show facts which, in effect, amount to a fraud against him, or bad faith on the part of the majority. A court of equity will interfere in the management of a corporation at the solicitation of a minority stockholder only when his complaint is based upon some illegal or unauthorized act of the majority, to his prejudice. This question is quite fully discussed in Gamble v. Queens Co. Water Co.,

123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527. Judge Peckham, delivering the opinion of the court, said:

"It is not, however, every question of mere administration or of policy in which there is a difference of opinion among the shareholders that enables the minority to claim that the action of the majority is oppressive, and which justifies the minority in coming to a court of equity to obtain relief. Generally the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering even in doubtful cases, where the action of the majority might be susceptible of different constructions. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests. Otherwise the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow."

But in any view can it be fairly said that the proposed merger is a fraud upon or oppressive to the minority stockholders of the Equitable Company? The learned justice at Special Term refused to find, as appears from his opinion, that the act of the majority was fraudulent or in bad faith, but he did find that it was "unfair to the interest of the plaintiff." I have been unable to reach the conclusion that it is unfair to the plaintiff. Certainly it is not so clear that it is unfair that a court of equity would be justified in interfering with the proposed action of a large majority of the stockholders of that company. The material facts are undisputed; the only dispute between the parties being inferences to be drawn therefrom. It appears that about 65 per cent. of the stock of the Mercantile Company and about 49 per cent. of the stock of the Equitable Company is held by the Equitable Life Assurance Society of the United States; that of the 20 directors who signed the merger agreement on behalf of the Equitable Company 9 are also directors of the Mercantile Company; and that several of the officers and directors of the Equitable Society are also directors of the Mercantile Company. With such an intermingling of interests it is not only proper, but necessary, to scrutinize the proposed merger agreement with care for the purpose of ascertaining whether it is fair to the plaintiff or not, but in doing so it must be borne in mind that it does not necessarily follow because there is such an intermingling of interests that the proposed agreement is void or so manifestly unjust as would justify a court of equity in interfering. Continental Ins. Co. v. N. Y. & H. R. Co., 187 N. Y. 225, 79 N. E. 1026; Burden v. Burden, 159 N. Y. 287, 54 N. E. 17. The proposed agreement is tentative only. The corporations are not bound in anyway until it is adopted and ratified by two-thirds of the stockholders. It is, at most, a plan to be submitted to the stockholders for their action; and for this rea-

son many of the authorities cited on the respondent's brief, in which directors have made contracts in which they have a personal interest, have no application.

The capital stock of the Mercantile Company is $2,000,000; its surplus about $7,000,000—making the book value of each share approximately $452. The capital stock of the Equitable Company is $3,000,000; its surplus about $10,000,000—making the book value of its shares approximately $440. In estimating the value for the merger, the directors deducted $5 per share as the estimated cost of liquidation, making the book value of the Equitable Company's stock $435 per share. Under the terms of the merger agreement, the capital stock of the Mercantile Company is to be increased to $3,000,000; its stockholders retaining their present holdings. The stockholders of the Equitable Company, upon surrendering their stock, are to receive, at their option, either $435 in cash for each share, or one share of the Mercantile stock for each two shares of the Equitable stock; provision having been made to insure the retirement for cash of sufficient stock, so that the new stock issued shall not exceed $1,-000,000. It will require $4,350,000 to retire the old stock, so that the Equitable Company will contribute to the merged company about $9,000,000, substantially the same amount which the Mercantile Company now has. The book value of the new company's shares will then be approximately $600.

A superficial examination of the proposed merger would seem to indicate it was unfair to the Equitable stockholders. The two companies contribute substantially the same amount of capital, and yet the Equitable stockholders will get in return for each two shares of their stock, whose book value is about $870, one share of stock of the new company, whose book value will be about $600, while the Mercantile stockholders will get two-thirds of the stock of the new company, and the shares they now hold will be increased in book value from $452 to $600. This apparent unfairness, however, disappears when the condition and earning capacity of the two companies are critically examined. The Mercantile Company earns annually about 12 per cent. on the book value of its shares—that is, about 51 per cent. on each share—while the equitable company earns less than 6 per cent. on its book value, or about 25 per cent. on each share. A further fact which is not disputed, and which in determining the value of the shares is a very pertinent subject of inquiry, is that the Equitable Company has suffered quite seriously from recent business conditions. Its relations with the Equitable Life Assurance Society are not now, and, it is not difficult to see, will not in the future, be nearly so profitable as formerly, and its earning capacity thereby is and will be largely diminished. The directors estimate the annual earnings of the new company, taking the annual earnings of the Mercantile Company and adding thereto the estimated earnings at 4 per cent. on the $9,000,000 to be obtained from the Equitable Company, as approximately $1,500,000; that is, about 8 per cent. on the book value of its stock, or 48 per cent. on each share. The exchange of two shares of stock in a company earning 25 per cent. on each share, with much uncertainty as to its future earning power, for one share in a company which can reasonably be expected

to earn 48 per cent. on each share, cannot be ·said to be such an unconscionable proposition as to justify a court of equity in interfering, and especially when the plan is approved by a very large majority of the stockholders of the Equitable Company. It is true, as pointed out by the learned justice sitting at Special Term, that the foregoing estimate figures the earnings upon the Equitable contribution at only 4 per cent. Whereas that corporation is now earning nearly 6 per cent.; but for reasons already suggested it is extremely doubtful whether the earnings of the Equitable Company will, if the merger does not take place, be more than 4 per cent., but, if that fact be assumed, then the shares in the new company will be more valuable than as now estimated. If the new company can earn upon its capital anything like the per cent. which the Mercantile Company is now earning, the net earnings per share of the new company will be more than twice as much as the present earnings of the Equitable Company. It may be assumed that the proposed merger will be of benefit to the stockholders of the Mercantile Company. Indeed, the main contention of respondent's counsel seems to be the great advantage which will accrue to the Mercantile stockholders rather than injustice which the stockholders of the Equitable will suffer.

It is argued that no allowance is made for the good will of the Equitable Company and that this is an asset taken from the Equitable stockholders without compensation. Good will is unquestionably an asset, but its value is a variable and uncertain quantity. It may exist to-day and disappear to-morrow. In case of a dissolution, either forced or voluntary, it adds but little, if anything, to the assets of the dissolved corporation. In this connection it may not be out of place to call attention to the fact that it does not seem to be seriously claimed that if the Equitable Company were to be dissolved, and its property distributed among its stockholders, they would realize more than $435 a share. If a large majority of the stockholders of the Equitable Company deemed it for their respective interests to liquidate the company, and proceedings in good faith were about to be taken in accordance with the statute for that purpose, no one, I take it, would seriously contend that a court of equity ought to interfere and prevent such liquidation. Windmuller v. Standard Distilling & Distributing Co. (C. C.) 114 Fed. 491; 4 Thompson on Corporations, § 4443.

After a careful consideration of the record, I do not think it can be said the proposed agreement is unfair to the plaintiff. It has been approved, as the statute requires, by the state superintendent of banks, and the fact is not disputed that the holders of over 27,000 shares of the Equitable Company's stock out of a total of 30,000 shares have signified their assent and approval of the merger. The Equitable Life Assurance Society holds some 15,000 of these shares, but it appears that other holders of 12,914 shares have signified their intention to vote for the merger, while only the plaintiff, who holds 300 shares, and one other stockholder who holds 6 shares, have signified their disapproval. No director of the Equitable has opposed the merger. It is resisted by the holders of barely 1 per cent. of the stock, while the holders of over 90 per cent. have signified their approval. Every stockholder of a corporation holds his stock subject to the execution of all the powers con-

ferred by law upon the corporation, and he must abide by the decision of the directors or stockholders, as the case may be, upon all matters which the law commits to their determination and control. Morawetz on Corporations (2d Ed.) §§ 413–417; Cook on Corporations (5th Ed.) § 684. The Legislature has seen fit, in the exercise of the powers conferred upon it, to provide the conditions upon which existing trust companies may merge. I know of no principle which justifies a court of equity in interfering with a large majority of the stockholders proceeding strictly in accordance with the statute simply because some of the minority stockholders think the proposed agreement is unsatisfactory or unfair. That question must necessarily under the statute be determined by the stockholders themselves, and, once their decision has been made, in the absence of fraud or bad faith, or of facts clearly showing that the proposed acts will be oppressive or unfair to the corporation, the court cannot and ought not to interfere. If it did so, it would, in effect, repeal the statute and subject the control of the majority to the will of the minority.

Finally, it is urged that the order should be affirmed so as to preserve the status quo until after the trial of the action; that, if it is reversed, any relief to which the trial might determine the plaintiff entitled would be unavailing. There would be force in this suggestion if there were any material dispute as to the facts; but there is not. This is recognized in the brief presented by the respondent's counsel, in which he states:

"Both defendants admit in their answers and affidavits all the material facts alleged by the plaintiff in support of the injunction. * * * They differ with the plaintiff only in his conclusion that the plan is iniquitous and unconscionable, and contend that it is fair and just. But that is obviously a question of construction for the court. * * *"

It is not even suggested that there was any deception or concealment in arranging for the merger; on the contrary, it appears that the directors of the Equitable Company acted openly and full information was given to its stockholders. The only question presented is whether the merger agreement by its terms and from the interrelation of the parties in interest is so unfair and unconscionable as regards the plaintiff and other minority stockholders that a court of equity should interfere and prevent its consummation. The facts are fully set out in the record; and, there being no dispute as to such facts, the legal questions involved can be as well passed upon now as at the close of the trial. These facts in my opinion do not show that the proposed merger is illegal, unfair, or unjust to the plaintiff, or that there is any ground whatever to justify a court of equity in exercising its equitable powers to prevent a large majority of the stockholders of a corporation doing precisely what the statute in express terms says they may do.

If I am right in this conclusion, then it follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs. All concur.