WESTON v. GOLDSTEIN et al.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

INJUNCTION—PENDENTE LITE.

Where it appears, pending an action to compel a reassignment of stock and for an accounting of dividends, that the stock in question was assigned in trust to one of the defendants without consideration, and he agreed to thus hold it for plaintiff and another, and not to assign the same without their assent, and in violation thereof he assigned the same to his sister, his co-defendant, for the alleged purpose of fraudulently depriving the plaintiff of his interest therein, an injunction is properly granted restraining the defendants, pendente lite, from voting on or disposing thereof.

Appeal from special term, New York county.

Action by Charles W. Weston against Louis A. Goldstein and another. From an order restraining defendants, pendente lite, from voting on or disposing of their stock in the corporation (56 N. Y. Supp. 755), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Abraham B. Schleimer, for appellants.

Harry Van Ness Philip, for respondent.

PATTERSON, J. This is an appeal from an order continuing, pending suit, an injunction by which the defendants were restrained from selling or disposing of certain shares of stock of the J. M. Gunst Disinfecting Company, and from voting upon any of said shares of stock. It was made to appear to the court below that in January, 1896, this plaintiff and one Williams owned 260 of the 500 shares of the capital stock of the Gunst Company, and that on the 17th of that month they entered into an agreement under seal with the defendant Goldstein, by the terms of which they were to transfer to him (and they did so transfer) 255 of those shares, Goldstein stipulating that he would not sell or dispose of such stock without the written consent of both Weston and Williams. It was further agreed that if Goldstein should sell or dispose of the shares, or any portion thereof, he would pay over to Weston and Williams 75 per cent. of the sum realized on such sale, and that Weston and Williams should be interested to the extent of 75 per cent. in any and all dividends declared or paid on such shares. It seems that, some time in January, 1899, Williams assigned all of his interest in the stock to the plaintiff. On the execution of the contract under seal, above mentioned, the 255 shares of stock were transferred on the books of the company from the names of Weston and Williams to the name of the defendant Goldstein. On the 6th of January, 1899, or about that time, Goldstein, in violation of his agreement, and without having procured the assent of the plaintiff or of Williams, transferred the 255 shares from himself to his sister, the defendant Schleimer; and it is alleged in the complaint that this scheme was a fraudulent device to destroy the interest of the plaintiff in the shares and in the company, and to get control of the company, the

255 shares being a majority. The essential facts upon which the order of injunction was granted appear in affidavits of the plaintiff and of one Gunst, who was the president of the company.

That the injunction is not too broad in its scope, if it were properly granted, is manifest. If the defendants are allowed to dispose of this stock, or, by voting upon it, put the company in the control of others, in violation and fraud of the plaintiff's right, a final judgment would be of little use. The present status should be maintained until the trial and decision of the cause. The only subject requiring consideration relates to the manner and form in which the essential facts were presented to the judge when the injunction was issued. It is claimed that the material allegations are made only on information and belief. If that is so, the injunction should not have been granted. But it is not so. The agreement under which Goldstein became possessed of the shares appears in this record. That he parted with them contrary to the terms of that agreement, namely, without the consent of either the plaintiff or Williams, is sworn to positively. That his act in so parting with them was a breach of that agreement, and of his trust relation to the plaintiff, and in which he held the shares, follows as a necessary consequence. The transfer of the shares from Goldstein to his sister is sworn to positively, and is admitted. When the agreement of January, 1896, was made, Goldstein was the secretary and treasurer of the company, with a salary of $20 a week, and owned no stock. The case thus presented entitled the plaintiff to an injunction against Goldstein. As to the defendant Schleimer, she became the transferee of these shares of stock, which Goldstein had no right to dispose of. They are traced into her hands under circumstances which induced the court below to believe that her title might be successfully impeached, and was merely colorable. We see no reason to differ with that court in that view of the case.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

VAN BRUNT, P. J. I concur in the result arrived at in the prevailing opinion. The great majority of the allegations contained in the papers upon which the injunction was granted being simply allegations upon information and belief are entitled to no consideration whatever. The plaintiff, however, made out a case for an injunction upon proof of the agreement set out in the complaint and its violation by the defendant Goldstein, unless the defendant Schleimer established the fact of her being a bona fide holder of the stock in question without notice. This result necessarily obtains because Goldstein admits the execution of the agreement, but alleges that it was not under that agreement that the stock was transferred to him, but under some other agreement, the legal effect of which he deposes to, but nowhere gives the language, or states whether it was in writing, or under what circumstances it was made; himself falling into the same error in regard to his allegations in respect thereto, for which he criticises the papers of the plaintiff. There is no legal evidence whatever in the defendant Goldstein's affidavit tend-

ing to show the existence of any agreement, the legal effect of which is as deposed to by him. He was bound to set out the agreement and to show how it was executed; and then the court could determine what its legal effect was. This he has utterly failed to do. As to the bona fides of the defendant Schleimer there is nothing whatever in these papers to show that she is a bona fide holder of this stock for value without notice; and the admitted circumstances attending the transfer are certainly suspicious, even if she had set forth affidavits of bona fides, as to have made it proper for the court to keep the stock where it is until the transaction could be sifted upon the trial.

The order should be affirmed.