SAMUEL J. BLOOMINGDALE and HIRAM C. BLOOMING-DALE, Plaintiffs, *v.* IRVING I. BLOOMINGDALE and ROSALIE B. BLOOMINGDALE, Defendants.

(Supreme Court, New York Special Term, June, 1919.)

Corporations — when restrictions upon transfer of stock are legal — contracts — equity — pleading.

Reasonable restrictions upon the transfer of the stock of a corporation which are imposed by the charter, articles of association or certificate of incorporation, and notice of which is stamped on the stock certificates, are legal.

Where a complaint in equity alleges that plaintiffs and one of the defendants were copartners; that they formed two corporations and reorganized a third to take over the partnership assets; that in the certificates of all three corporations it was provided that no stock should be transferred until it was first offered for sale to the other stockholders on terms to be fixed by the by-laws or by agreement, but that in case the offer to sell was refused the stock should no longer be subject to the conditions; that each of the partners took one-third of the common stock of the corporations in his own name and caused his third of the preferred stock to be issued in his wife's name; that at the same time a written agreement was entered into between the three partners on the one hand and their wives on the other, prescribing the mode in which the stock might be transferred in accordance with the certificate of incorporation and that by-laws were duly adopted providing that stock could be transferred only in accordance with the agreement, notice of all of which restrictions as to transfer was stamped on the face of each stock certificate, and it is further alleged that the

agreement, among other things, provided that the wives might transfer their stock to their husbands without offering it to the other stockholders but that thereafter it could not be transferred except in accordance with the terms of the agreement; that a certificate for certain preferred stock was issued nominally to the wife of the defendant partner but was in fact delivered to him and subsequently transferred to him by her in writing, and upon information and belief that thereafter in violation of the provisions of the certificate of incorporation, the by-laws and the agreement and without plaintiffs' knowledge, the defendant partner parted with said certificate and the same came into the possession of his wife, who is made a co-defendant with him, and that she now holds and claims to be the owner thereof although she paid no consideration therefor and although she received the same in violation of the agreement, and it is alleged also that defendants are antagonistic and are not living together; that the defendant wife has threatened to interfere with the business of the corporation in such a way as to cause it great loss and damage and has also threatened to encumber, pledge or dispose of the said shares of stock in violation of the agreement, for all of which no adequate remedy at law exists, and the complaint prays that the defendant wife be adjudged to have acquired no right or title to the stock; that the alleged transfer thereof be declared null and void; that she be directed to transfer the stock to her husband and that he be restrained from disposing of it except in accordance with the agreement, a demurrer thereto by the wife will be overruled.

While an absolute prohibition of the transfer of stock unlimited as to time would be against public policy the agreement in the case at bar is not, for it expressly permits the free sale of the stock after its purchase has been refused by the other stockholders.

DEMURRER to complaint.

Ingraham, Sheehan & Moran (Geo. L. Ingraham, of counsel), for plaintiffs.

Max S. Stern, for defendant Rosalie B. Bloomingdale.

FORD, J.   Rosalie B. Bloomingdale, one of the two co-defendants, demurs to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.   The other defendant is her husband.

From the complaint it appears that Samuel J. Bloomingdale and Hiram C. Bloomingdale, the plaintiffs, and Irving I. Bloomingdale, the non-demurring defendant, were for many years prior to August, 1917, copartners conducting a large department store in the city of New York.   Dealing in pianos was an important branch of the business, and the firm also owned and used in connection with its business valuable real estate, partly in its own name, partly in the name of the Arcade Realty Company, a corporation, all of whose stock was owned by the copartners.   They decided about July, 1917, to conduct their business through the medium of corporations to be formed for that purpose; also to reorganize the Arcade Realty Company and hold and manage all their real estate through the reorganized corporation.   They accordingly formed two corporations, the Bloomingdales Piano Co., Inc., to conduct the piano business, and the Bloomingdale Bros., Inc., to carry on the general business of the department store.   The reorganization of the Arcade Company was also effected.

In the certificates of all three of the corporations it was provided that no stock should be transferred until it was first offered for sale to the other stockholders on terms and conditions to be fixed by the by-laws or by an agreement between the stockholders, but in case the offer to sell were refused, the stock would be no longer subject to the conditions.

On September 20, 1917, the incorporation and reorganization of the three companies were perfected.   On the same day the capital stock was issued to the copartners.   Each took one-third of the common stock in his

own name but caused his third of the preferred stock to be issued in the name of his wife. At the same time an agreement was made in writing between the three copartners on the one hand and their three wives on the other providing at length, and in great detail prescribing, the mode in which the stock might be transferred in accordance with the provisions of the certificate of incorporation. Also on the same date the by-laws were adopted, which provided that the stock could be transferred only in accordance with the agreement.

The complaint involves the stock of two only of the corporations, the piano company and the realty company. Since the two causes of action are practically identical except that they deal with the stock of different corporations, consideration may be confined to that concerning the stock of the piano company.

To that company all the assets and good will of the piano business valued at $1,350,000 was transferred in consideration of its stock, of which 2,800 shares of the preferred was without consideration issued nominally to the demurrant, but the certificate was delivered to Irving I. Bloomingdale, her husband and co-defendant. It was subsequently transferred in writing by her and remained in his possession.

There is a provision in the agreement regulating the manner of transferring the stock to the effect that the wives may transfer their stock to their respective husbands without offering it to the other stockholders, but after such transfer the stock becomes subject to the terms of the agreement forbidding its subsequent transfer except in accordance with those terms.

On the face of every certificate of stock is stamped this notice:

" Under the certificate of incorporation and by-laws of this Company this stock is transferrable only in

accordance with the terms of the agreement between the stockholders dated September 20, 1917, now on file with the Company, and upon proof of compliance therewith.''

The gravamen of the complaint follows:

'' Plaintiffs further allege, upon information and belief, that thereafter, in violation of the provisions of the certificate of incorporation and the by-laws of said corporation, and in violation of the agreement between the parties to this action, dated September 20, 1917, and without the knowledge of the plaintiffs or the other parties to the agreement, the defendant Irving I. Bloomingdale parted with certificate No. B-3 for 2800 shares of the preferred stock of Blooming- dales Piano Co., Inc., and the same came into the possession of the defendant Rosalie B. Bloomingdale, and she has ever since, and now holds said certificate and claims to be the actual owner thereof.  That said defendant Rosalie B. Bloomingdale paid no considera- tion for the stock, and received the same in express violation of the terms of the aforesaid agreement marked Exhibit 'A' (hereto annexed and made a part thereof) and thereby acquired no title to the stock or any beneficial ownership therein.''

It is further alleged:

'' That the said Rosalie B. Bloomingdale and the defendant Irving I. Bloomingdale have become antag- onistic and are not living together as husband and wife; that said defendant Rosalie B. Bloomingdale is antagonistic to the plaintiffs and to said defendant Irving I. Bloomingdale, and claims to be the owner of the certificate for 2800 shares of the stock of said Piano Company, as aforesaid, now in her possession, and has threatened to interfere with the affairs of the said business conducted by the said corporation, which will seriously interfere with the business of the said

corporation and cause great loss and damage to the plaintiffs and the other parties to the said agreement of September 20, 1917; and said defendant Rosalie B. Bloomingdale has also threatened to encumber, pledge or dispose of said 2,800 shares of stock of said Bloomingdales Piano Co., Inc., and, by reason of her alleged claim of ownership of said stock, to interfere with the business of said corporation, for which plaintiffs would have no adequate remedy at law.''

Judgment is demanded that the defendant Rosalie B. Bloomingdale acquired no right or title in or to the 2,800 shares of the piano company; that the alleged transfers thereof be declared null and void; that she transfer the stock to the defendant Irving I. Bloomingdale, and that he be restrained from disposing of it except in accordance with the agreement of August 20, 1917.

From the measures taken by the copartners as evidenced in the provisions of the certificates of incorporation and the by-laws of the three corporations to which they turned over all the copartnership assets, and the agreement between all the stockholders of August 20, 1917, no less than by the specific allegations of the complaint, it appears that the dominant purpose of the copartners was to retain under the new arrangement as complete ownership and control over the business and property of the corporations as they formerly did while the ownership and control were vested in the copartnership so far as that purpose could lawfully be accomplished through the three corporations.

To this end they sought to prevent outsiders from getting hold of any of the stock and to preserve the integrity of their absolute domination over the business and the property in all of their aspects. Indeed the comment of Chief Judge Cullen in *Ripin* v. *United*

*States Woven Label Co.,* 205 N. Y. 447, aptly applies to the new arrangement of their affairs which was effected in August, 1917, by the copartners. "By the Business Corporations Law," says the learned jurist, "three or more persons might form a corporation for any lawful business with certain specified exceptions, such as railroad, moneyed corporations and others of a public or *quasi* public character. Under this statute many businesses or private enterprises which formerly had been conducted by partnerships or individuals, became the subject of corporate control and ownership. Such corporations were little more (though not quite the same as) than chartered partnerships."

Counsel for the demurrant relies mainly upon the decision in *Matter of Argus Co.,* 138 N. Y. 557. It is important to note that that was a special proceeding to determine who were the lawfully elected directors of the Argus corporation. It was instituted under section 27 of the General Corporation Law of 1892. "The sole point in controversy," Chief Judge Andrews states in his opinion, "is, which of the two contesting sets of claimants received a majority of the legal votes." And again at page 569 he states: "The question now presented is purely legal." In applying the dicta contained in that decision to test the sufficiency of a complaint in equity, careful discrimination and cautious circumstances should be exercised to say the least.

Yet I find nothing in it which militates against the sufficiency of the complaint. There a mere private agreement between the majority stockholders of the corporation was involved. The court held that the purchaser for value but with knowledge of the agreement forbidding a transfer of the stock to him, by the selling stockholder, who was subject to the terms of the agreement, took the legal title to the stock, that it

was legally transferred to him on the books of the company and was validly voted at the stockholders' meeting. But nowhere did the court even intimate that equity might not intervene to enforce the rights of the other parties to the agreement provided they could show the requisite facts to warrant the court in taking cognizance of the controversy.

The court does say that " the agreement was in its character executory, and for its violation the other parties could resort to such remedy as the law affords upon the breach of a new contract by either party, which in ordinary cases is an action for damages." But it is also intimated that a court of equity might decree specific performance of the contract, in its discretion, " by compelling him [the transferee] to transfer the stock to the other parties entitled to the benefit of the agreement, upon being reimbursed the sum expended in its purchase."

To the arguments of the appellants that an action for damages would be inadequate and that the court could specifically enforce the contract, the court answered that " no such equity had been enforced," and adds: " The fact that Speer may have held the stock subject to the enforcement of the equitable remedy, in no way interferes with his legal title, nor did it preclude the corporation from treating him as a stockholder or from according him all the rights of a stockholder, so long as the company was not prevented from so doing by the judgment or process of the court."

Of course the court, sitting in a purely legal proceeding of narrow scope, did not attempt to enforce any equitable remedy. In that special proceeding the actual decision did not go beyond declaring that Speer, having purchased the stock presumably at its fair value but in violation of the agreement, which was

Supreme Court, June, 1919.        [Vol. 107.

between individual stockholders and to which neither he nor the corporation was a party, had the legal right to vote that stock at the stockholders' meeting in question. Had the other parties to the agreement invoked their equitable remedy, the rights of Speer might have been differently adjudicated. Indeed the court mentions some features of the case " which might be presented to a court of equity to influence its action in granting. or withholding the remedy of specific performance."

From the foregoing considerations it is clear that the *Argus Case, supra,* is of slight weight as authority upon the rights of the plaintiffs in this equitable action. Here the other parties to the agreement are indeed seeking the equitable remedy in the form of a decree which will annul any apparent title which the demurrant may have to the stock now in her possession.

As to the *dictum* of the court in that case to the effect that the relief of specific performance might not be granted without reimbursement of the sum expended in its purchase, the complaint alleges that the demurrant obtained the stock without consideration of any kind. Hence the complaint is not defective for failure to offer reimbursement. Even if she did pay for the stock, or her possession of it is supported by any other consideration, such consideration did not pass to these plaintiffs. It is the acts of the two defendants that are attacked and if there was a consideration it was an element in their personal transactions and cannot affect the rights of the plaintiffs who had no part in them.

Even if the language of the complaint warranted the inference that the defendant husband made a gift of the stock to his co-defendant wife, still no obligation would be imposed upon the innocent plaintiffs to compensate her. For the prayer of relief is not that the stock should be delivered to them but to the husband,

the other co-defendant. It would be for him to make compensation to her should the court upon the trial determine that equity required it, and the court might, if it saw fit, so decree under the complaint as it stands.

But notwithstanding the assumption of counsel for the demurrant that the stock was given to her by her husband, I do not think that a gift is either alleged or admitted in the complaint. It merely alleges, as against him, that he " parted with " the stock, and as against her, that it " came into the possession of " the demurrant, in violation of the provisions before mentioned. This seems to me to show merely a lack of knowledge on the part of the pleaders as to just how the change of possession came about. The rule is that a gift *inter vivos* must be strictly alleged and proved and particularly delivery by the donor with intent to vest title in the donee. *Gannon* v. *McGuire,* 160 N. Y. 476, 481.

As to the inadequacy of relief through an action at law and the irreparable damage that threatens the plaintiffs through the passing of the stock of either one of the corporations into the hands of outsiders, they might easily be inferred from the general allegations of the complaint. Such an eventuality would defeat the whole plan and purpose of the perfectly legal arrangement entered into by the Bloomingdales for the future conduct and management of the old partnership business and property. Their very large interests were transferred to the corporations in reliance upon their ability to own and control them practically as they had controlled them for many years previously. They took extraordinary precautions to insure the integrity of their enterprises and the continuance of their absolute dominion over them, and to safeguard them from any outside interference of any kind or in any degree.

Supreme Court, June, 1919.          [Vol. 107.

A single share of the stock of any one of the corporations passing into hostile possession places in the hands of the possessor unlimited opportunity to harm and harass the management. The business is strictly private and carried on in competition with other similar establishments. The inviolability of its business privacy and commercial secrets would be no longer safe from its aggressive rivals if the stock might be transferred in disregard of the prohibitions mentioned. The complaint does sufficiently allege that just such dangers now threaten them. It is manifest that the plaintiffs have no adequate remedy at law.

Thus far the transferability of the stock of a corporation in violation of a mere agreement between stockholders has been considered — such a transfer was considered in the *Argus Case, supra,* and to which the corporation was not a party.

Here we are considering a case in which the plaintiffs rely not upon such an agreement but upon one made pursuant to provisions contained in the certificate of incorporation and the by-laws of the corporation, with notice stamped upon the face of each certificate of stock of the limitations imposed upon its transferability.

As to the legality of such restrictions, doubtless an absolute prohibition unlimited in point of time against the transfer of the stock would be invalid as against public policy. *Brown* v. *Britton,* 41 App. Div. 57. Both the certificate of incorporation and the agreement embodying the restrictions expressly permit the free sale of the stock after its purchase has been refused by the other stockholders. The limitations imposed are in my opinion binding and legal in all respects. Gen. Corp. Law, § 10.

In a Massachusetts case (*Barrett* v. *King,* 181 Mass. 476), where a similar restriction upon its alienation of

corporate stock was involved, Chief Justice Holmes remarks: " Furthermore, looking at the stock merely as property, it might be said that, so far as appears and probably in fact, it was called into existence with this restriction inherent in it, by the consent of all concerned. See *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, 488. This is not the case of a by-law attempting to cut down rights of property already acquired, against the will of some of the owners. The whole stock originally was issued to the defendant King in payment for the plant and he was desirous of keeping it in the hands of consumers, that is of liquor dealers. And this suggests a further consideration. Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. Notwithstanding decisions under statutes, like *In Re Klaus,* 67 Wis. 401, there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm."

I have been unable to find any New York decision directly in point but there are cases which recognize the enforcibility in equity of limitations upon the transferability of corporate stock. In *Weston* v. *Goldstein,* 39 App. Div. 661, this department affirmed an injunction *pendente lite* prohibiting the defendants from voting upon or transferring their stock which had been transferred by one defendant to the other in violation of an agreement with other stockholders, the court declaring: " The transfer of the shares from Goldstein to his sister is sworn to positively and is admitted. When the agreement of January, 1896, was made, Goldstein was the secretary and treasurer of the company, with a salary of twenty dollars a week, and owned no stock. The case thus presented entitled the plaintiff to an injunction against Goldstein. As

42

to the defendant Schleimer, she became the transferee of these shares of stock which Goldstein had no right to dispose of. They are traced into her hands under circumstances which induced the court below to believe that her title might be successfully impeached and was merely colorable. We see no reason to differ with that court in that view of the case.''

In *Ripin* v. *United States Woven Label Co., supra,* the question was as to the right of a majority of the stockholders to increase the number of directors notwithstanding a provision in the certificate of incorporation that it could not be done except by unanimous consent of all the stockholders. It was held that section 21 of the Stock Corporation Law which gives to majority stockholders the right to increase the number of directors was limited by the certificate of incorporation by virtue of section 10 of the General Corporation Law which sanctions in the certificate '' any limitation upon its powers, or upon the powers of its directors and stockholders, which does not exempt them from the performance of any obligation or the performance of any duty imposed by law.'' '' To uphold a by-law,'' says the court, '' inconsistent with the statutory provision regulating the affairs of a corporation would allow a majority to invade the rights of a minority and to impose limitations on a stockholder to which he never gave assent, while to uphold the provisions of the certificate is merely to compel a party to live up to his agreement.''

In *Kinnan* v. *Sullivan County Club,* 26 N. Y. 213, it was held that a mere by-law limiting the transferability of stock was invalid although such limitation might be fixed in the certificate of incorporation. To like effect are *Driscoll* v. *West Bradley & C. M. Co.,* 59 N. Y. 96, and *Bank of Attica* v. *Manufacturers' & Traders' Bank,* 20 id. 501.

In *Leggett* v. *Bank of Sing Sing,* 24 N. Y. 283, the court upheld the lien of the bank on the stock of a shareholder by virtue of a provision in the articles of association to the effect that " no share or shares shall be transferable * * * unless the shareholder making the transfer shall previously discharge all debts due by him or her to said association." The shares had been secretly sold in disregard of that provision which was known to the transferee and the court held that the debt owing from the former holder must be satisfied before the transferee could acquire the *legal title* to the shares.

But a similar provision in the articles of association of the defendant was upheld in *Gibbs* v. *Long Island Bank,* 83 Hun, 92; affd., 151 N. Y. 657, on opinion below, even without actual notice to the transferee. In that case the court says: " The agreement between the shareholders contained in the articles of association was valid and effectual, and bound every holder of the stock. It was not prohibited by any statute nor was it inconsistent with public policy. It was intended exclusively for the benefit and protection of the bank. It was referred to upon the face of the certificate, and the date and place of record of the articles of association stated. Every prospective purchaser of shares of the capital stock was thereby informed that the shares were held subject to some condition therein contained. Having such information, a purchaser must be deemed to have had notice of those facts which, if he used ordinary diligence, he would readily have ascertained. (*Williamson* v. *Brown,* 15 N. Y. 354-360; *Baker* v. *Bliss,* 39 id. 70.)"

In ,other states the enforcibility of charter provisions limiting the transfer of corporate stock is recognized. Thus where it was provided in the charter that " no member shall be allowed to sell his stock until

he has offered it for sale to the company at a price not exceeding its original cost," the Supreme Court of Kansas declared that an attempted transfer in violation of the provision " operated as a transfer of the title as between the seller and himself but it did not necessarily complete his right to the benefits of a stockholder so far as the company was concerned." *Star Mutual Telephone Co.* v. *Longfellow,* 85 Kan. 353. To like effect is *Chaffee* v. *Farmers' Co-operative Elevator Co.,* 168 N. W. Rep. 616, where the Supreme Court of North Dakota upheld the refusal of the lower courts to compel a transfer on the books of the company on account of a violation of a by-law authorized by the charter requiring a stockholder to give the company notice and a ninety-day option to purchase before transferring his stock. The Supreme Court of Wisconsin (*Casper* v. *Kalt-Zimmers Manufacturing Co.,* 159 Wis. 517) declared valid a provision in the articles of incorporation of a company requiring that before the transfer of stock the stockholder must first offer it for sale to the board of directors.

In a leading case the Supreme Court of the United States also has passed upon the nature of the title acquired by one receiving an assignment of bank stock in violation of the act incorporating the bank and declares: " No person, therefore, can acquire a legal title to any shares, except under a regular transfer, according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank, under the act of incorporation, of which he is bound to take notice." *Union Bank* v. *Laird,* 2 Wheat. 390.

I have sought diligently but without success for a case impeaching the legality of reasonable restrictions upon the transfer of the stock of a corporation where they are imposed by the charter, articles of associa-

tion, or certificate of incorporation, and notice of the restrictions is stamped on the certificate of stock. All the decisions point in the other direction. If such restrictions are legal and binding, it follows that the courts have power to enforce them and afford adequate redress for any violation of them which causes or threatens damages to any one under their protection. If the remedy at law is inadequate, then equity will intervene and make such decree as justice requires to effectuate the lawful purposes of the incorporators.

The demurrer will be overruled and judgment granted to the plaintiffs with leave to the demurrant to plead over on payment of costs.

Ordered accordingly.