(121 App. Div. 355)

## RATHBONE v. AYER et al.

(Supreme Court, Appellate Division, Third Department.   September 11, 1907.)

1. CORPORATIONS—CERTIFICATES OF INCORPORATION—CONTRACTS OF STOCK SUBSCRIPTION.

> A certificate of incorporation, which is signed by the directors and the only stockholders, and which states the amount of capital with which the corporation will begin business, and which specifies the number of shares each agrees to take, constitutes a legal liability on the part of each to pay the corporation for the number of shares, specified.

2. EVIDENCE—VALUE OF PROPERTY—PRESUMPTIONS.

> The price paid for property at an actual bona fide sale thereof is presumptive evidence of the value thereof.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2456.]

3. CORPORATIONS—SUBSCRIBERS FOR STOCK—LIABILITY.

> Individuals organized a corporation, with a capital stock of $500,000, to operate a steel plant of a defunct corporation, which one of them at a bona fide sale had bought for $85,000. The plant was sold to the corporation for $500,000. The individuals gave to the corporation their checks for their stock subscriptions, amounting to $500,000, and took back from it receipts for such payments. The checks were deposited to the credit of the corporation, and it received a conveyance of the plant and gave its check for $500,000 therefor, which amount was ostensibly redistributed to the same individuals who had paid it to the corporation and in the same amounts. *Held* to authorize the trustee in bankruptcy of the corporation to sue stockholders on their stock subscriptions.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 444, 445.]

4. APPEAL—REVIEW—GRANTING NEW TRIAL.

> The Appellate Division may grant new trials where justice requires, and examine the opinion of the court below to ascertain the grounds of the decision; and, where the court below erroneously decided the case as a matter of law, the Appellate Division may grant a new trial.

> Kellogg and Sewell, JJ., dissenting.

Appeal from Trial Term, Chemung County.

Action by James B. Rathbone, as trustee in bankruptcy of the Elmira Steel Company, a bankrupt, against F. Wayland Ayer and others. From a judgment of nonsuit, rendered after a trial, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Reynolds, Stanchfield & Collin (Frederick Collin and Edward G. Herendeen, of counsel), for appellant.

David B. Hill, O. U. Kellogg, and H. H. Rockwell, for respondents.

COCHRANE, J.   The complaint herein has heretofore been sustained by this court on a demurrer thereto for insufficiency.   84 App. Div. 184, 82 N. Y. Supp. 239.   Keeping in view the determination then made, the case on this appeal becomes much simplified, and much discussion may be eliminated which might otherwise be pertinent.   The inquiry is now narrowed to a consideration of the question as to whether the plaintiff has made sufficient proof of the allegations of his complaint.

The Elmira Steel Company was organized as a domestic corporation by a certificate of incorporation filed July 10, 1899. Such certificate was signed by the defendant Ayer and others, who were the directors and the only stockholders. It stated the amount of capital with which the corporation would begin business as $500,000, and specified the number of shares of stock which each subscriber agreed to take. This certificate constituted a legal liability on the part of each subscriber to pay the corporation for the number of shares of stock which it was stated in such certificate that he would take. Phœnix Warehousing Company v. Badger, 67 N. Y. 294; Dayton v. Borst, 31 N. Y. 435. On July 3, 1899, the directors met in Philadelphia, where some of them resided. A resolution was adopted, authorizing the purchase at a price not exceeding $500,000 of all real and personal property formerly belonging to the Elmira Iron & Steel Rolling Mill Company. This property is referred to in the case as a "steel plant." The title thereto had been acquired May 27, 1899, by Mr. Baird, who subsequently became one of the incorporators and directors of the Elmira Steel Company, and he held such title for the benefit of himself and the other directors, for which they paid $85,000. It was also resolved at said meeting "that the treasurer call for the immediate full payment of subscriptions to the capital stock." The defendant Ayer was not present at such meeting, but he and all the other stockholders, who were also directors, gave to the corporation their checks for the several amounts of their respective stock subscriptions, aggregating $500,000, and took back from the corporation receipts for such payments, which receipts specified that they were entitled to certificates for the number of shares of stock subscribed for by them. These checks were deposited to the credit of the corporation. Thereupon the corporation gave its check to Mr. Baird for $500,000, and received from him a conveyance of the steel plant, and the $500,000 thus paid to Mr. Baird was ostensibly redistributed to the same persons who had paid the same to the corporation and in the same amounts. At no other time have the stockholders paid anything on account of their stock subscriptions. The complaint alleges substantially that the delivery of the checks to the corporation, the conveyance thereto of the property, and the redistribution to the stockholders of the checks were parts of the same transaction, and such allegation is in conformity with the proof. Proof was also given as to the subsequent indebtedness of the corporation, its bankruptcy, the appointment of plaintiff as trustee in bankruptcy, and the other facts alleged in the complaint. Every statement of fact contained in the complaint seems to have been substantiated by evidence.

The learned trial justice seems to have been of the opinion that the corporate assets had been applied in payment of the steel plant, but thought there was not sufficient evidence of an intentional and wrongful overvaluation of such plant in transferring it to the corporation for the price of $500,000. It is in evidence that on May 31, 1899, the proposition to organize the corporation for the purpose of taking over and operating the steel plant was discussed and considered. Four days prior thereto title to the steel plant had been acquired by Mr. Baird, in behalf of himself and his associates, by the payment of

$85,000. That was an actual bona fide sale. That the price paid for property is evidence of its value is too well settled to admit of discussion. Hoffman v. Conner, 76 N. Y. 124; Campbell v. Woodworth, 20 N. Y. 499; Dixon v. Buck, 42 Barb. (N. Y.) 74; Gill v. McNamee, 42 N. Y. 44; Knickerbocker Life Insurance Company v. Nelson, 78 N. Y. 145; Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1052; Matter of Johnston, 144 N. Y. 563, 39 N. E. 643. The case of People ex rel. Mayor, etc., of New York v. McCarthy, 102 N. Y. 630, 8 N. E. 85, has been cited as holding a contrary doctrine. The court there had under consideration the price named in deeds as evidence of value. The distinction was pointed out by this court in People ex rel. Batt v. Rushford, 81 App. Div. 301, 80 N. Y. Supp. 891.

The trial justice considered that the price paid was competent, both as to the good faith of the defendant and as a circumstance in determining the value of the plant, but that, standing alone, it was insufficient to put the defendant to his proof, and cited on such proposition the case of Hawver v. Bell, 141 N. Y. 140, 36 N. E. 6. All that case decides is that the price paid for personal property is not sufficient evidence of its value several years thereafter; such property in the meantime having deteriorated. On the other hand, in Parmenter v. Fitzpatrick, 135 N. Y. 196, 31 N. E. 1034, Judge Peckham, in discussing the competency of evidence of the price property sold for at private sale as bearing on the question of the value thereof, said:

"If there were no other evidence upon the subject, it certainly would be sufficient for the jury to base a verdict upon; and, if there were other and contradictory evidence, then it should be placed before the jury for its consideration upon the question of value."

And in Matter of Johnston, 144 N. Y. 563, 39 N. E. 643, an administrator was held liable for improvidently selling at public auction an undivided interest in leasehold property, and was charged with the value thereof, based solely on the price which he had paid at private sale for a corresponding undivided interest in the same property; and it was held by Judge Haight that the price paid at private sale was sufficient to sustain the finding as to value, although, as in this case, there was another sale which was under criticism, and there was the additional fact that the entire leasehold had been sold at a partition sale for an amount corresponding to about one-half of what the administrator had been charged.

The purchase of an idle plant like this in its entirety is not an unusual event. It distinctly appears from the evidence that it was a part of Mr. Baird's business to make such purchases and sales, and that he frequently did so. The argument that the property when bought was the idle plant of a defunct corporation, and when sold to the new corporation had become reanimated and thereby possessed of additional value, is specious, but unsound. When bought it had the same elements and possibilities of value as when turned over to the corporation. That argument would apply to many purchases, particularly at auctions, where property is frequently and openly bought for speculative purposes. It has never been held, however, that the price paid was not evidence of value simply because the purchaser expected to make a profit. The answer to this and similar arguments is that the

purchase price is sufficient evidence of value to put to his proof one who does not desire to be bound thereby. In the consideration of this question it should not be overlooked that this corporation did not create a demand or market for the plant. It was not the intention or expectation that the corporation should bring to the venture any additional capital, energy, or ability beyond what these individuals possessed, and it is too plain for argument that under such circumstances the property was worth no more to them as a corporation than it would have been worth to them as individuals, had they not covered themselves with the mantle of corporate protection.

The property was purchased of Reid & Boler, of Cleveland, Ohio, who were dealers in such properties, and who held an option therefor; the defendant and others loaning the money for such purchase. This was not a forced sale. The manner of sale was such as to imply a fair price for the property voluntarily sold. While Baird, upon the purchase thereof, took title in his own name, it is evident that the defendant and his associates had such an interest therein that, when they, as directors of the corporation, bought it, they bought it of themselves, and as against themselves the price paid by Baird is sufficient evidence of value, in the absence of other evidence. With the value of the property shown to be $85,000, its purchase by the directors for $500,000 was harmful to the corporation. It is immaterial whether we regard the directors as having paid $500,000 for the property, or as having compromised their stock subscriptions of that amount by payment of property of the value of only $85,000. In either event they have knowingly violated their trust and are answerable to the plaintiff.

It is urged by the defendant that he and his associates were at liberty to make a profit on the property, and that they had a right to sell it to their corporation at such a price as they might reasonably have supposed it was fairly worth to the corporation. That is probably true; but their good faith and the price which they might reasonably have supposed the property to be fairly worth to the corporation were matters of inference to be drawn from the evidence and circumstances disclosed by the evidence. Gamble v. Queens County Water Company, 123 N. Y. 104, 25 N. E. 201, 9 L. R. A. 527; Douglass v. Ireland, 73 N. Y. 100; Brockway v. Ireland, 61 How. Prac. (N. Y.) 372, 376; National Tube Works Company v. Gilfillan, 124 N. Y. 302, 306, 26 N. E. 538; White, Corbin & Co. v. Jones, 86 Hun, 57, 34 N. Y. Supp. 203. The actual value of the plant when it was turned over to the corporation was an important element as bearing on that question.

In Huntington v. Attrill, 118 N. Y. 365, 23 N. E. 544, it was held that the question was as to the fair value of the property at the time of its sale to the corporation, not "dependent upon subsequent success or failure of the investment, further than such result may have been legitimately within evidential contemplation at the time of the sale, in view of the uses for which it may have had available advantages within itself." In Douglass v. Ireland, 73 N. Y. 104, it is said that all that is necessary "is to prove two facts: (1) That the stock issued exceeded in amount the value of the property in exchange for which it was issued; and (2) that the trustees deliberately, and with knowledge of the real value of the property, overvalued it, and paid in stock for it

an amount which they knew was in excess of its actual value. The value must be determined in any action in which the question arises upon such evidence as may be given, having respect to the circumstances and the nature of the property, and the scienter and guilty action of the trustees may be proved either directly or inferred from circumstances." In the same case it is said that "the seller of the property may well be presumed to know its value. In Lake Superior Ice Company v. Drexel, 90 N. Y. 91, it seems to have been held that directors might testify directly to their good faith in the transaction and to their belief as to the value of the property, an opportunity of which this defendant failed to avail himself

It must not be overlooked that these directors, who are charged with having improvidently wasted the corporate assets by purchasing their individual property, constituted the full board of directors, and the circumstances affecting their motives and the value of the property were peculiarly within their own knowledge, and it is not a harsh rule that in such a case slight evidence and few circumstances be deemed sufficient to put them to their proof. There was also such a remarkable disparity between the price paid by the defendant and his associates and the price at which they as individuals sold to themselves as directors the same property as to naturally suggest the necessity of an explanation, not only as to this marvelously enhanced value, but also as to the rectitude of their motives and their good faith in selling the property to themselves as directors, and in making such an extremely large profit out of the treasury of the corporation of which they were officers. In Boynton v. Andrews, 63 N. Y. 93, it was said:

"While a disparity as to value might not establish fraud of itself, cases may arise where the acknowledged difference between the price allowed or agreed ⁻ ⁻ ⁾n and the actual value is so enormous as to bear upon its face clear and ..ristakable indicia that a fraud was intended to be perpetrated. It cannot. he questioned that where property, the value of which is well known and understood, or capable of being easily ascertained, is taken at a most exorbitant estimate, far beyond any intrinsic and real value. it raises a strong presumption that the valuation is not in good faith and was made for a fraudulent purpose. This presumption will be conclusive, unless it is rebutted by evidence which fully explains the apparent bad faith."

See, also, to the same effect, Douglass v. Ireland, supra.

All the circumstances surrounding the formation of the corporation and the transfer of the property to it were in evidence. It appeared what the nature and condition of the property was, for what purposes it had been used, and for what purposes the directors intended that it should be used. There was some evidence as to its expected earning capacity, as to what was to be expended in improvements, how and in what manner it was to be managed, and how and by whom it was to be financed; and there were the opinions of experts as to what it would probably accomplish. It also appears that the pretended payments of the stock subscriptions to the corporation by the directors, the payment to Baird for the steel plant, and the pretended redistribution of the proceeds of the sale of such plant to the corporation back to the several directors was merely a check transaction, constituting an exchange of checks, and that for the most part such checks of the directors to the corporation were given without corresponding funds

to the credit of the makers of such checks in the bank on which such checks were drawn. From all of these circumstances and the enormous profit made, and from the evidence of market value, there was sufficient to form an estimate as to what the directors in the exercise of good faith might reasonably have assumed this property to be fairly worth to the corporation

When the plaintiff rested his case, the defendant, without offering further evidence, also rested, and moved for a dismissal of the complaint; and the plaintiff moved for a direction of a verdict in his favor. It is insisted that by such motions the parties are deemed to have submitted to the court for its determination all questions of fact, as well as of law; no request to go to the jury having been subsequently made. That is generally so. It is apparent, however, from the opinion of the learned trial justice, that he did not assume to determine any question of fact, but erroneously held as matter of law that the evidence of the prior purchase and sale of the property was insufficient to raise a question of fact for determination. This court, in the exercise of its plenary power to grant new trials where justice requires, may examine the opinion of the court below to ascertain the grounds of the decision. Bryant v. Allen, 54 App. Div. 504, 67 N. Y. Supp. 89; Crossman v. Wyckoff, 64 App. Div. 554, 558, 72 N. Y. Supp. 337; Tenoza v. Golliek, 80 App. Div. 638, 81 N. Y. Supp. 353; Fox v. Metropolitan Street Railway Company, 93 App. Div. 231, 87 N. Y. Supp. 754; Hall v. Lanza, 97 App. Div. 492, 89 N. Y. Supp. 980. We think, therefore, that a new trial should be granted, in order that the question of fact presented by the evidence may be determined.

Judgment reversed on the law and facts, and a new trial granted, with costs to the appellant to abide the event. All concur, except KEL-.LOGG and SEWELL, JJ., who dissent.

JOHN M. KELLOGG, J. (dissenting). The defendants received stock in the corporation in exchange for property transferred to it. This they had the right to do under section 40 of the stock corporation law, as amended by chapter 688, p. 1834, Laws 1892. The delivery of checks by the various stockholders, and a return to them of checks for like amount, was a mere matter of form, and had no meaning or effect, except as it may indicate the intention of the parties. The only ground of liability which can be urged against the defendants for their action is that the transaction was fraudulent and that the stockholders knowingly put in the property at an exaggerated value. The only evidence offered by the plaintiff tending to show a fraudulent overvaluation of the property was the fact that the property was put in at $500,000, and in fact only cost the defendants $86,000. The conditions and circumstances under which the sale was made do not satisfactorily appear. The evidence showed that the property was a steel plant, out of use at the time; that it had been thoroughly examined, after the defendants purchased and before its transfer to the company, by competent experts, who reported that by an expenditure of about $5,000 the plant could be put into operation within 30 days so as to earn $3,000 a day. The details of the examination and many of the conclusions arrived at were shown. It also appears that before the

transfer the defendants had made what they considered adequate arrangements for working capital and the conduct of the business. It is clear the defendants believed the property was worth much more than it cost them, and it is evident that it was worth much more than $86,-000, considering the time, the manner, and the purpose for which it was transferred to the company.

At the close of the evidence the plaintiff moved for a nonsuit. The plaintiff contended that, by the manner in which the stock was subscribed for and checks given and returned, the defendants were liable, without reference to whether they acted in good faith or not with reference to the valuation of the property, and that the defendants' good faith was not in the case. The court asked the plaintiff what questions of fact he claimed there were for the jury. Counsel stated the question whether the tin-plate plant was transferred to the company as a part of the $500,000, and he did not know that that had any materiality under the evidence. The court suggested that it could make but $1,000 difference any way, as that seemed to be its value, and that, defendants having asked for a nonsuit, perhaps it was better for the plaintiff to ask the direction of a verdict and submit it to the court. Plaintiff's counsel said, before passing upon the suggestion of the court, he wanted to know definitely about the tin-plate plant. It was then agreed between counsel that the tin-plate plant was a part of the transfer and turned in at $1,000. Plaintiff then asked to go to the jury upon the question whether the defendants, by means of their check, paid their subscriptions in money. The court declined to submit the question, holding that there was no question of fact on that subject. The court then reserved its decision of the motion for a nonsuit. The plaintiff said that before making any motion he desired to amend his complaint, which was allowed. Thereupon the plaintiff asked the direction of a verdict, and a written stipulation was drawn that the jury be discharged, that the court reserve the determination of the two motions, that counsel be heard upon them, and, if the court determined the plaintiff's motion should be granted, that it direct a verdict for the amount named in favor of plaintiff, and, if it determined the defendants' motion should be granted, that it so order, and that either of the two orders made be deemed made in the presence of the jury with the same effect as though made in their presence. This stipulation enabled the court to dispose of the case only by granting one of those motions; both parties claiming there was no disputed question of fact.

The discussion upon the trial between the court and counsel shows that the whole matter was left for the decision of the trial justice, and after the parties have made a stipulation discharging the jury and rendering it impossible for the court to render any decision, except to grant a motion for a nonsuit or to direct a verdict for the plaintiff, neither party is at liberty thereafter to claim that there was a question of fact for the jury. The request by both parties for the direction of a verdict amounted to the submission of the whole case to the trial judge, and his decision upon the facts has the same effect as if the jury had found a verdict in the plaintiff's favor after submitting the case to them. Adams v. Roscoe Lumber Co., 159 N. Y. 176, 180, 53 N. E. 805; Sigua Iron Co. v. Brown, 171 N. Y. 488, 493, 64 N. E.

194. The court did not hold as a matter of law that the purchase price of the property was not some evidence of its value. It clearly was some evidence of its value, although but little is known as to the circumstances or manner under which it was sold. But the evidence is quite conclusive that the defendants believed they were making a great bargain in the purchase, and that, after the examination and report by the experts, they believed it had great value for use as a producing plant. It was bought by the defendants as scrap. It was sold by them as an operating plant. The trial justice well says that the disparity between $86,000, the price the defendants paid for the property, and $500,000, the price at which they put it into the company, is so great as persuasively to suggest that there was an overvaluation. There is no evidence as to what the property was worth to the company for the purposes for which it acquired it, or what the defendants believed it to be worth; nor is there any evidence, as suggested by the trial justice, from which the court can find what amount of overvaluation there was. He properly holds that the plaintiff is not entitled to recover the profits the defendants made, if they bought the property cheaply. The measure of their liability is their fraudulent overvaluation, if any.

Conceding, as we must from the evidence, that the defendants believed the property was worth much more than $86,000, and that in fact it was worth over that sum to be turned over as a producing plant to a corporation, there is no evidence from which the court can determine what the actual value of the plant was, how much it was overvalued, or how much the defendants actually believed the plant was worth for the purpose for which it was turned over to the company. As the trial judge well says, those matters are left for the court to guess at. The plaintiff was required to establish his case by affirmative evidence, and to show the fraudulent overvaluation as a basis for recovery. The presumption is that the officers of a corporation perform their duties to the corporation, rather than violate them, and it will not be presumed that they turned the property in to the corporation at a price which wronged it. We then have two sales of this property—one at $86,000, the conditions under which it was made not being shown; and one for $500,000, the circumstances of which are shown. We may therefore say that the last sale is some evidence of the value of the property, as well as the first sale, and that the two, under all the circumstances shown, do not establish that the property was turned into the company at a fraudulent overvaluation. It is evident that the trial justice felt there was an overvaluation; but from the evidence he was entirely unable to determine the amount thereof, and therefore granted the nonsuit. The plaintiff did not, by affirmative satisfactory evidence, establish a case against the defendants, and under the motions and stipulation the trial court properly rendered judgment against him.

The judgment should therefore be affirmed.