FRANK C. ARMSTRONG, on Behalf of Himself and All of the Stockholders of the RAY CONSOLIDATED COPPER COMPANY, Plaintiff, *v.* CHARLES HAYDEN and Others, Defendants.

Supreme Court, New York County, March 24, 1926.

Corporations — merger — representative action by stockholder to restrain sale of assets of one foreign corporation to another — claim that directors of selling corporation conspired to defraud stockholders thereof or that stockholders will be prejudiced by merger not sustained — temporary injunction denied — plaintiff has remedy under laws of State of Maine to have stock appraised and redeemed if he refuses to consent to merger.

In a representative action by a stockholder to restrain the sale of the assets of one foreign corporation to another based on an alleged conspiracy on the part of the directors of the selling corporation and others to defraud the stockholders thereof, a temporary injunction will be denied in the absence of anything in plaintiff's affidavits to substantiate the charge that a conspiracy exists, that the stockholders will be prejudiced by the consummation of the merger, or that the share-for-share basis upon which the merger was to be effectuated is so grossly and utterly inadequate as to be consistent only with the proper inference that the board of directors of the selling corporation has acted dishonestly and with sinister motives in recommending the plan to its stockholders.

Furthermore, plaintiff would seem to have an adequate remedy under the laws of the State of Maine by which he may have his stock appraised and redeemed by the selling corporation in the event he refuses to consent to the merger.

APPLICATION for a temporary injunction in an action by stockholder on behalf of himself and all other stockholders to enjoin a proposed sale of the assets of the corporation to a similar corporation.

*Daniel F. Cohalan*, for the plaintiff.

*Chadbourne, Stanchfield & Levy* [*William Wallace, Jr.*, of counsel], for the defendants.

LEVY, J.    Plaintiff, a stockholder of the Ray Consolidated Copper Company, has brought suit on behalf of himself and all the stockholders of that company to enjoin a proposed sale of the assets of the company to the Nevada Consolidated Copper Company in return for 3,077,179 shares of stock and the assumption of the Ray Company's liabilities. The board of directors of both companies had recommended to their respective stockholders that they approve the proposed sale, and stockholders' meetings had been called for that purpose. Several days prior to November 10, 1925, the date fixed for said stockholders' meetings, the plaintiff obtained an order which contained a preliminary injunction restraining the defendants from participating in the meeting of the Ray stockholders, or any

Misc. 786]                    Supreme Court, March, 1926.

adjourned meeting, and which required them to show cause why the injunction should not be continued until the trial of the action. A stipulation was entered into by the attorneys for the respective parties, permitting the holding of the meeting of the Ray stockholders on the scheduled day, for the sole purpose of calling the meeting *pro forma* and taking an adjournment.

The complaint is replete with allegations which might form the basis of various causes of action or charges against some or all of the defendants. It is evident, however, from a reading of the supporting affidavits that the only claim which the plaintiff urges with any apparent degree of seriousness is that the proposed sale is the result of a conspiracy on the part of the directors of the Ray Company, and other defendants, to swindle and cheat the Ray stockholders by giving them, in return for each share of present Ray stock, a share of Nevada stock of much less value. Allegations of the complaint that one of the aims of the conspiracy is to obtain control of the copper industry in the United States in violation of the Sherman Anti-Trust Law, constitute mere conclusions which find no persuasive evidentiary support in the affidavits submitted by the plaintiff. Equally unfounded seem to be the allegations of the complaint which charge the directors of the Ray Company with having been derelict and guilty of breaches of trust in the performance of their duties to the stockholders of the company, unless the misconduct, as claimed, be confined to their alleged participation in a conspiracy to " unload " the Nevada Company on the Ray stockholders, to the great benefit of the Nevada stockholders and the obvious detriment of the former. Allegations of the complaint that the Ray-Chino merger consummated early in 1924 constituted a similar " unloading " of the Chino Company upon the Ray stockholders can hardly, in themselves, form a basis for granting the injunctive relief here sought with respect to a merger between the Nevada Company and the present Ray Company, which acquired the assets of the Chino Company almost two years ago. The prayer for relief does not demand that the Ray-Chino situation be set aside, and references in the complaint to this already completed transaction are, therefore, at best, merely some evidence of the improper execution of its trust by the Ray directorate. The allegations that there were interlocking directors on the boards of the Ray and Nevada Companies would not, by themselves, even if true, entitle the plaintiff to enjoin a proposed sale whose consummation required, under the laws of Maine, the State of incorporation of the Ray Company, the approval of the majority of the outstanding stock of the company in addition to the approval of the board of directors. Intermingling of directors and even of stock-

holders does not necessarily vitiate a proposed merger. It merely requires that the proceedings be subjected to closer scrutiny than would otherwise be the case. (*Colby* v. *Equitable Trust Co.*, 124 App. Div. 262; affd., 192 N. Y. 535.)

In order to succeed on the trial of this action, it would be necessary for the plaintiff to establish not only that the contemplated merger is an improvident one from the point of view of the stockholders of the Ray Company but also, to employ the language of Judge Peckham in *Gamble* v. *Queens County Water Co.* (123 N. Y. 91, 99), "that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests." The Court of Appeals there well stated that "otherwise the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow." (See, also, *Flynn* v. *Brooklyn City Railroad Co.*, 158 N. Y. 493; *Schwab* v. *Potter Co.*, 129 App. Div. 36; affd., 194 N. Y. 409; *Colby* v. *Equitable Trust Co.*, *supra*.) Indeed, the plaintiff seems to have realized that mere inadequacy of price was. insufficient, *per se*, to entitle him to the equitable relief which he seeks, for as has already been observed, the complaint also contains allegations that the proposed merger is the result of a conspiracy to defraud, swindle and cheat the stockholders affected.

Passing, for the moment, the question of the adequacy or the inadequacy of the price to be obtained by the Ray stockholders if the proposed merger is consummated, and directing my attention in search of evidence that the directors in recommending it to their stockholders were influenced by motives and interests inconsistent with the welfare of such stockholders, I find that the papers before me are wholly barren in that respect, except for the claims, in large part conclusions, of the plaintiff. It is undenied that at the time the Ray board of directors approved the proposed Ray-Nevada consolidation, there was only one director of the Ray Company who was also a director of the Nevada Company. This common director, Jacklin, president of the Nevada Company, had been in general charge of the Ray, Chino and Nevada companies from the dates when they respectively began operations and he appears to have been, to a great

extent, responsible for the success of all three companies. At the present time he owns more stock in the Ray Company than in the Nevada Company, and his interest would, to all outward appearances at least, be in favor of Ray as against Nevada. Although in February, 1924, there were three other directors common to the Ray and Nevada companies, these three were during that year succeeded by directors, none of whom was or is a director in the Nevada Company. True it is that the plaintiff alleges these new Ray directors are under the control of those whom they succeeded, but there is no proof to support these allegations, while they are denied by the former directors as well as by their successors. Moreover, the board of the Ray Company consists of eleven directors and that of Nevada of fourteen, so that even an interlock as to four directors would certainly leave more than a majority of each board free from entangling alliances, so called. Besides, the proposed merger met with the unanimous approval of the board of directors of the Ray Company, and this circumstance doubtless acquires especial significance. Not only Jackling but also various other of the Ray directors own more stock in that company than in Nevada. Aldrich, president of the Ray Company since 1907, owns a substantial amount of Ray stock and no Nevada stock whatsoever. The same is true of Sully. Indeed, the plaintiff does not even claim that any of the present Ray directors own stock in Nevada. Under the circumstances, no motive or interest is disclosed for any action by the Ray board of directors contrary to the interests of the Ray stockholders. In view of plaintiff's complete failure to support his claim of a conspiracy to defraud, it must be evident that he can succeed on this application only by showing a reasonably fair prospect of being able to establish at the trial, not merely that the Ray stockholders would be prejudiced by the consummation of the merger, but in addition that the share-for-share basis upon which it was to be effectuated is so grossly and utterly inadequate as to be consistent only with the proper inference that the Ray board of directors has acted dishonestly and, therefore, with sinister motives in recommending the plan to its stockholders.

In the complaint and in the affidavit on which the order to show cause was granted, plaintiff's attack of fraud is based on an alleged disparity between the number of pounds of copper per share in the ore reserves of the Ray Company and those per share in the reserves of the Nevada Company. Plaintiff's figures purport to be taken from various statements and reports issued by the respective companies from time to time. From these, the plaintiff has calculated that each share of outstanding Ray stock is represented by 1,977 pounds of copper in the ground, whereas each share of

Nevada stock can only claim 1,568 pounds of copper similarly situated. This loss of 409 pounds of copper in the ground, per share, would be offset only by a gain of sixty-eight cents per share in net current assets, plaintiff contends, and, therefore, he charges that the proposed consolidation on the basis of a share of Nevada for each outstanding share of Ray would enrich the Nevada stockholders at the expense of those of the Ray Company. Strange as it may seem, no affidavits by mining engineers, geologists or others likely to have knowledge upon the subject are presented by the plaintiff. Yet this may be explained by the powerful influence of some of these defendants in this field of industry, resulting in plaintiff's inability to reach out to such persons. At the same time it is significant that every affidavit offered in his behalf, and there were eight, is sworn to by the plaintiff. In this connection it is important to note that not even one affidavit by any of the remaining stockholders of the Ray Company, who number more than 16,000, is submitted in aid of this application, in spite of the fact that this is a suit in behalf of all the stockholders. In marked contrast to the absence of any such supporting proofs, is the abundance of affidavits by experts, among them Allan Bateman, Professor of Economic Geology at Yale University and editor of the Journal of Economic Geology, in opposition. These assert with not a little plausibility that it is absurd to compare any two mines on the basis of the amount of copper in the ground in their respective ore reserves. Copper thus located is only of value to the extent that it can be extracted at a cost which would permit its sale at a reasonable profit. The amount lost in this process, the cost of production, the life of the mine and various other factors all contribute to the proper determination of the value of a mine in accordance with recognized engineering standards. Among these elements are "dilution" and the amount of precious metals recovered in the process of mining copper, neither of which the plaintiff seems to have taken into consideration.

According to the answering affidavits, the grade of two and three one-hundredths per cent copper assigned to the Ray ore reserves in 1916 was only an advance estimate, arrived at by development drilling. In actual practice the ore, while being mined, is augmented by the lower grade ore surrounding it on the sides and top, and as a result a greater tonnage must be mined with a consequent decrease in the percentage of copper content. In a mine like Ray, "underground," the amount of dilution is much larger than in the Nevada mine, for example, where from the surface, steam shovel mining methods are employed to a large extent. Furthermore, the amount of precious metals recovered at the Nevada mine appears

to be much larger than that recovered at Ray, thereby creating a rather substantial difference in the relative production costs at the two mines. Then too, the percentage of loss in extracting the copper from the ore is less at Nevada than at Ray, this being but another element in Nevada's favor. It is claimed by the defendants that in appraising a mine the approved method is (1) to ascertain the present worth of the mine, *i. e.*, the present value of the total amount of recoverable copper, taking an assumed selling price and giving effect to the various factors affecting the cost of production, and (2) to add to the present worth the net current and other assets of the company. In determining the present worth of the recoverable copper, the estimated life of the given mine is an important consideration. Other things being equal, the shorter the life of the mine, the shorter the period during which the total profits may be realized from it, and in all probability the greater its present worth. The shorter estimated life of the Nevada Company, therefore, would seem an additional circumstance in its favor in calculating the relative present value of the Ray Company and the Nevada Company. According to the affidavits of the mining engineers who appraised the respective properties prior to the proposed merger, the present worths of the mines were such that a share of Nevada and a share of Ray were about equal. Moreover, it seems that the investing public has estimated the share-for-share basis to be a proper one, as is indicated by the fact that the market values of the respective shares have for many years been approximately the same.

Confronted with these considerations, the plaintiff apparently realized that he could not successfully dispute the inadequacy of his own method of comparing the values of the properties, or the correctness of those employed by the engineers. Accordingly, he sought to overcome them by various claims, among them that 20,000,000 tons of ore which were involved in condemnation proceedings brought by the Nevada Company, should be deducted from its published figures as to ore reserve. This is seemingly met by the answer of the Nevada engineers that this quantity of ore was never included in Nevada's definitely computed resources, but, on the contrary, was merely additional. This, and the several other situations, among them, the matter of the declaration of the dividends and the Skinner statistics, upon which the plaintiff relies, might be more elaborately dealt with here, but as they may far more adequately be disposed of at a formal trial, at which the relative rights and equities of the parties could be appropriately developed, I hesitate to enter upon any such task. Besides, under the laws of the State of Maine the plaintiff would seem to have

an adequate remedy under the circumstances here disclosed, to
have his stock appraised and redeemed by the company; on the
other hand, the examination before trial which has recently been
allowed to the plaintiff may be the means of eliciting other and
further information that may tend to strengthen his position and
thus ultimately entitle him to the relief that he demands.

In the circumstances, however, I feel that the plaintiff is not
entitled to injunctive relief and the motion will, therefore, be denied.