JAMES N. CLEARY and Another, Suing on Behalf of Themselves and All Other Stockholders of FOX FILM CORPORATION, Similarly Situated and in the Right of FOX FILM CORPORATION, Plaintiffs, and GUSTAV OPPENHEIMER, Intervening Plaintiff, v. CHARLES W. HIGLEY and Another, Defendants.

Supreme Court, New York County, December 19, 1934.

*Olvany, Eisner & Donnelly* [*J. F. Donnelly, S. Michaelman* and *W. J. McNichols* of counsel], for the plaintiff.

*D. F. Cohen* [*H. Fierman* of counsel], for the intervening plaintiff G. Oppenheimer.

*O'Brien, Boardman, Conboy, Memhard & Early* [*J. V. Hewitt* of counsel], for the defendants Higley and Gubelman.

*Beekman, Bogue & Clark* [*E. K. Hanlon* and *M. Weiss* of counsel], for the defendants Stuart, Niver and Halsey, Stuart & Co.

*Donovan, Leisure, Newton & Lumbard* [*J. E. Lumbard* and *R. H. Thayer* of counsel], for the defendant Brush.

*Phillips, Mahoney, Liebell & Fielding* [*J. T. Mahoney* of counsel], for the defendant La Frentz.

*A. S. Campbell* [*J. T. Mahoney* of counsel], for the defendant Winmill.

*Mudge, Stern, Williams & Tucker* [*C. J. Shearn, H. R. Stern* and *H. C. Pickering* of counsel], for the defendants Chase Securities Corporation, Chase National Bank and M. W. Dodge.

*Davisson, McCarty & Lockwood* [*D. B. Riker* of counsel], for the defendant Ingold.

*S. Ringel*, for the defendant Rogers.

*Spence, Hopkins & Walser* [*J. T. Mahoney* and *H. Hopkins, Jr.*, of counsel], for the defendant Herrick.

*Mr. Harris*, for the defendants O. E. Koegel and W. C. Michel.

ROSENMAN, J.   The motions to dismiss the complaint as against all the defendants, made at the close of the plaintiffs' case, are granted.

This is a derivative stockholders' action brought for the benefit of Fox Film Corporation.   As the proof has developed, the action is divided into two separate and distinct parts.

*First*, the plaintiffs seek to recover from the defendants all the profits made by the syndicate in the 240,000 shares of stock, totalling the sum of approximately $4,000,000.   *Second*, the plaintiffs seek to recover from the defendants the damage which they claim Fox Film Corporation suffered as a result of the issuance by it on April 17, 1930, of 1,600,000 shares of its class A stock.

It is obvious that from both of these causes of action some of the defendants are completely immune so far as the evidence thus far adduced, or any reasonable inference based thereon, is concerned.   The defendants Halsey, Stuart & Co. and Charles B. Stuart have not been connected in any way with either the profits made by the syndicate or the damage caused by the acts of the directors.   The defendant Rogers, who was the attorney for the Fox Film Corporation, withdrew from the situation before any of the acts complained of were consummated; and consequently cannot be charged with liability on either branch of the case.

There   seems to be no basis on which the Chase National Bank can be held liable either for the profits of the syndicate or for the loss arising to Fox Film Corporation.   The only evidence upon which any claim is made against the bank is that the bank loaned the syndicate the funds with which to carry out their plan.   No other participation by the bank is alleged or proved.   There was no agency shown; there was no pleading or proof that the bank was the *alter ego* of the securities corporation.   Even if it be assumed that the bank had full knowledge of the use to be made of these loans, it could not be made liable for the making of such loans in the ordinary course of its business, as a conspirator with the

borrower. Therefore, apart from the other considerations hereinafter discussed, the complaint should be dismissed as against these four defendants.

The transactions forming the basis of the complaint concern three separate corporations. It cannot be assumed, nor indeed is it contended, that any one of these corporations was set up as a dummy for the purpose of committing a fraud or of cloaking with the semblance of legality what otherwise would be unlawful. They had all been organized prior to the acts here complained of. Long before the date of the transactions giving rise to this litigation, each of these corporations had had its own separate existence, and had conducted its own separate and independent business transactions. Consequently it is impossible to disregard the various corporate entities here involved.

The basis of the complaint here is the exchange of certain properties and money between these three corporations, pursuant to a larger reorganization plan, in which each of the three corporations participated, and which was designed to clear from debt the Fox Film Corporation and the Fox Theatres Corporation. Specifically, on April seventeenth the Fox Film Corporation issued 1,600,000 shares of its class A stock. It transferred to Fox Theatres Corporation all of this stock, about $8,000,000 in cash and a release of a claim of approximately $19,000,000 which it had against Fox Theatres Corporation. In exchange, it received 660,900 shares of stock of Loew's, Inc., and a release of a large contingent liability which had arisen on the prior purchase by Fox Theatres Corporation of Loew's stock. Fox Theatres Corporation thereafter immediately transferred these 1,600,000 shares of Fox Film A stock to General Theatres Equipment, Inc., and received therefor the sum of $48,000,000. The syndicate had obtained for its members an agreement from General Theatres Equipment, Inc., to let it have 240,000 of this block of 1,600,000 shares at thirty dollars per share. Knowing that it was to receive this stock at thirty dollars per share, it proceeded to sell in the open market 120,000 shares at various prices approximating forty-two dollars per share. Therefore, by April eighteenth when the deal was consummated, the syndicate had a clear profit of approximately twelve dollars per share on 120,000 shares of this stock. After April eighteenth it continued to sell the remainder of its block of shares at a further profit. The total profit which it made on the entire block of 240,000 shares was about $4,000,000.

While it is perfectly proper for bankers in a transaction to make a profit for taking the risk involved therein, it is contrary to good conscience and to well-settled principles of equity for a director

of a corporation to make such profit at the expense of his corporation. The defendant Ingold and the defendant Dodge were directors of General Theatres Equipment, Inc. They were also participants in the syndicate gains. As such directors they were disqualified from making a profit for themselves by trading in the assets of their corporation. If in violation of their duty they proceeded to make such a profit, they should be compelled by appropriate proceedings to give them up. Not only must they themselves surrender such profits, but those who co-operated with them with knowledge of the facts must likewise disgorge any profits which they have made as a result of the transaction. (*Irving Trust Co.* v. *Deutsch*, 73 F. [2d] 121.) The defendants Ingold and Dodge as directors, and the defendant Chase Securities Corporation as a member of the syndicate, are, therefore, liable, so far as the plaintiff's case goes, for all the profits made by all the members of the syndicate, viz., approximately $4,000,000.

In this connection, as well as in connection with any similar statements elsewhere in this opinion, it is to be noted that this motion to dismiss having been made at the close of the plaintiff's case, these defendants have not yet presented whatever evidence they may have on this subject.

The corporation entitled to a return of these profits, however, is not the Fox Film Corporation. It is the General Theatres Equipment, Inc. The claim for the return of these profits should not be confused with the claim for the damages sustained by reason of the transfers from Fox Film Corporation to Fox Theatres Corporation. This is not a suit to set aside the transactions of April seventeenth and April eighteenth. It would be obviously impossible to vacate all the transfers herein involved. If this were possible, and if the transfers were set aside so that Fox Film were again to become the owner of the 1,600,000 shares, some claim might be urged that the profits made by the syndicate belong to Fox Film Corporation and should be paid by the syndicate to Fox Film Corporation. However, the action here does not seek to rescind, but actually affirms, the transaction, alleging that because of the transaction the defendants are liable for damages resulting therefrom.

Therefore, it must be definitely taken that these 1,600,000 shares of Fox Film stock became the property of General Theatres Equipment, Inc. The defendants Ingold and Dodge as such directors could not undertake to do part of the financing by buying for themselves and their associates 240,000 out of the 1,600,000 shares and then take the profits arising therefrom. Their duty as directors was to permit General Theatres Equipment, Inc.,

to make all this profit by itself selling the 240,000 shares of stock in the open market.

This duty and the liability resulting from a breach of it are clearly illustrated by the recent decision of the Circuit Court of Appeals in this Circuit in the so-called *Sonora Products* case (*Irving Trust Co.* v. *Deutsch, supra*).

The directors Ingold and Dodge have taken over for their own profit a part of their corporation's contract and have made profits therefrom for themselves. The law prevents them from substituting themselves for the corporation for their own gain. They and the other members of the syndicate are liable to a proper representative of the General Theatres Equipment, Inc., for these profits.

Can they also be liable to the Fox Film Corporation, as claimed by the plaintiffs? This is not a situation where tort feasors are sought to be held for damages sustained by various separate plaintiffs. The doctrine that tort feasors may be compelled to pay all the damages sustained by all plaintiffs resulting from their tort is not applicable here. This branch of the action seeks to recover, not damages to Fox Film Corporation, but profits made by trustees in violation of their duty towards their corporation. The trustees of General Theatres Equipment, Inc., owed a duty to that corporation to let that corporation make all of the profits possible from the purchase of the 1,600,000 shares. They violated that duty. No such duty was owing to the Fox Film Corporation. It cannot be said that the Fox Film Corporation had a right to make the profit on 240,000 shares. It was selling the entire block of 1,600,000 in exchange for certain other shares of stock. Whether the valuation placed upon that block of 1,600,000 shares by the directors was fraudulently placed at too low a figure is a question to be considered later in this opinion. The point here is that it was the vendee, namely, the General Theatres Equipment, Inc., which was entitled to this full block of 1,600,000 shares and to whatever profits could be made on any of them.

There was no duty on the part of the General Theatres Equipment, Inc., not to deal with the Fox Film Corporation so as to make a reasonable profit for itself, providing it did not cause the Fox Film Corporation to suffer a loss in so doing. It is clear that it could not loot its subsidiary corporation; but it is equally clear that in ordinary business relationship it could make reasonable profit by transactions with the subsidiary. On the other hand, the defendants Ingold and Dodge owed a clear duty to General Theatres Equipment, Inc., not to make profits for themselves while they were directors of the corporation, which profits could have been made by the corporation itself.

The question here is not one of double liability. It seems clear that the defendants who are members of the syndicate had only one liability. The question to be determined is to whom that liability was owing. The gravamen of the action is that these defendants have profits which belong in the pockets of another. The issue is, in whose pockets do these profits belong?

The plaintiffs contend that the syndicate is also liable to Fox Film Corporation as well. They have called my attention to authorities in our State which they contend justify the imposition of this additional liability upon the members of the syndicate for the profits made by them (*General Rubber Co.* v. *Benedict*, 215 N. Y. 18, and *Matter of Auditore*, 249 id. 335).

The authorities cited do not sustain the position taken. They indicate merely that where one man owes a separate duty to two separate entities, he may be made liable to each of them for violation of the respective duties.

In the *General Rubber Company* case the action was brought by a parent corporation against the defendant, one of its directors, for knowingly having acquiesced in and approved of the theft of moneys belonging to the plaintiff's wholly-owned subsidiary. The claim was that, as a director of the plaintiff, the defendant director owed a duty to the plaintiff to see to it that the funds of its wholly owned subsidiary were not diverted so as to cause a diminution of value of the stock of the subsidiary corporation owned by the parent corporation. One of the arguments against liability was that the defendant was answerable for the same wrong to the subsidiary company, and was thus exposed to the risk of a double liability. The court, however, stated that " If the defendant has violated any duty to the subsidiary company, it is not the same duty that he owes to the plaintiff. He is not liable to the subsidiary company *qua* director. He is not liable to that company for mere neglect. He is liable to it if at all only as a stranger might be liable. If he has joined in a conspiracy to plunder it, he must like any other tort feasor, make compensation for the plunder."

In other words, the court pointed out that the duty which the defendant owed to his own corporation was quite different from the duty which he owed, if any, to the subsidiary corporation. The action was for damages. It was held that the damage caused to the plaintiff by the defendant's conduct could be collected by the plaintiff, and that the damage done by his conduct to the subsidiary corporation might be collected by the subsidiary corporation.

Neither the facts nor the reasoning is applicable to this case. The syndicate is liable for its profits to Fox Film Corporation and to the General Theatres Equipment, Inc., arising out of different

duties. The claim against the syndicate is not one for damages, but one for retaining profits which belong to the Fox Film Corporation. If the profits belong to the Fox Film Corporation they obviously cannot belong either to the Fox Theatres Corporation or to the General Theatres Equipment, Inc. They must belong to only one of the three corporations. The duty of the directors of General Theatres Equipment, Inc., was to see to it that no profits which should have been made by General Theatres Equipment, Inc., should find its way into their own pocket.

In order to create an analogy between the *General Rubber Company* case and this case, we would have to change the facts here, so that the Fox Film Corporation would become the parent corporation and General Theatres Equipment, Inc., the subsidiary corporation. If those were the facts, then it might be claimed that the syndicate would be liable to General Theatres Equipment, Inc., for the illegal diversion of these profits, and also liable to Fox Film Corporation for any damages which could be shown to it by reason of any resulting diminution of the value of the shares of stock of the subsidiary corporation which were owned by the parent corporation. Of course those are not the facts, and are mentioned merely to show that no possible analogy exists between the *General Rubber Company* case and the proven facts of this case.

The same is true of the second authority cited (*Matter of Auditore*, 249 N. Y. 335). In that case Frank Auditore, in violation of his duty as director to the Auditore Contracting Co., Inc., misappropriated some of its funds. The estate of Joseph Auditore owned half of the stock of this corporation. Frank Auditore, the wrongdoer, was at the time an administrator with the will annexed of Joseph Auditore, deceased. Frank Auditore had been sued for his misfeasance to the corporation. A judgment had been recovered, but had not been paid. Frank Auditore set up this judgment as a bar against the claim which had been made against him by the estate, that the value of the defendant's stock in the corporation had been diminished by his conduct. The court pointed out that there was a duty owing to each of the claimants, the Auditore Contracting Co., Inc., and the estate of Joseph Auditore. Frank Auditore was a fiduciary of each, and to each he owed a separate duty. He owed the duty to Auditore Contracting Co., Inc., not to misappropriate its funds; and he owed the duty to the estate of Joseph Auditore not to do anything to diminish the value of its assets. His conduct breached both duties. The court pointed out that if he had paid the judgment, no harm would have been done to the assets of the estate because the value of its stock would have been restored.

It is obvious that that case, like the *General Rubber Company* case, depends upon the existence of two different duties and relationships owing by one defendant; and has no application to the facts and claims in the case at bar.

There remains the question of the liability of the defendants who were directors of the three corporations, for the loss which plaintiff claims has resulted to the Fox Film Corporation from the transactions of April seventeenth and eighteenth. The plaintiffs allege that in the exchange of property between the Fox Film Corporation and the Fox Theatres Corporation, these defendant directors undervalued what was being given up by the Fox Film Corporation, and proportionately overvalued what was being received by it; and that these acts constituted a fraud upon the corporation, for which the various defendants are liable.

It is elementary that the plaintiffs must show more than a mere mistake of judgment on the part of any defendant director. They must go further and show, in addition, that the act was one of fraud, and that the fraud damaged the corporation.

If the boards of these three corporations were total strangers to each other, there would be no doubt that the plaintiffs had failed to establish a cause of action. In the first place they have shown no damage to the Fox Film Corporation as a result of the transfers. The only proofs as to the value of Fox Film stock were the market quotations on small blocks of shares during the months of April and prior thereto, and also the price of thirty dollars placed upon it by the sale which gives rise to this action. The proof of market value of a small number of shares is obviously no criterion to establish the value of the tremendous block of 1,600,000 shares, which were twice as many as were then on the market. (*Heiner* v. *Crosby*, 24 F. [2d] 191 [C. C. A. 3d Circuit 1928].) In estimating the value of this class A stock in order to determine whether or not the stock was undervalued when sold at a valuation of thirty dollars per share we must consider, in addition to the size of the block, various other factors; the fact that it had been offered to stockholders at a lower price than thirty dollars and that it had no substantial sale; that rights to subscribe to this class of stock were traded in at prices which fixed the market value of the stock at a lower price than thirty dollars; that under the two prior plans of financing, one of which had been approved by the stockholders, the price was lower than thirty dollars; that the stock sold on the market below thirty dollars a short time before April, 1930; the various exigencies of the situation, namely, that the Fox Film Corporation and Fox Theatres Corporation could not meet their obligations as they became due and to that

extent were insolvent; that there were judgments outstanding against both corporations in large amounts, and that receivership proceedings were actually pending against each of them.

Many factors enter into the determination of the value of a large block of stock such as this. It is not enough merely to rely upon the market value as established by sales on the stock exchange of small quantities. A proper valuation would involve considering the rate of return, the security afforded that dividends would be regularly paid, the possibility that dividends would be increased or diminished, the size of accumulated surplus applicable to the payment of dividends, the record of the corporation and its prospects for the future, the general investment value of the stock, the selling price of stocks of like character, the appraised and sale value of assets, book valuations, market conditions, reputation of the corporation and any other relevant evidentiary fact and circumstance entering into the value of the corporate property and reflecting itself in the worth of corporate stock. (*Matter of Fulton*, 257 N. Y. 487; *Bodell* v. *General Gas & Elec. Corp.*, 15 Del. Ch. 119; 132 Atl. 442; affd., 15 Del. Ch. 420; 140 Atl. 264; *People ex rel. Knickerbocker Fire Ins. Co.* v. *Coleman*, 107 N. Y. 541.)

As was said in the case of *Bodell* v. *General Gas & Elec. Corp.* (*supra*): " It would be hazardous to venture a cataloging of all the possible considerations which directors might take into account in fixing a price which will be fair to the corporation and its existing stockholders and best calculated to yield the largest possible capital."

But even if the plaintiff had shown that thirty dollars per share was an undervaluation, it would still not have sustained its burden of proof. The Fox Film Corporation did not receive cash for its stock; it received instead 660,900 shares of Loew's, Inc. The plaintiff would have to show that this Loew's stock was worth so much less than the Fox Film A stock, plus $8,000,000, plus the value of the claim released that a *prima facie* case of fraud would be established. (Stock Corp. Law, § 69; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Rathbone* v. *Ayer*, 196 id. 503.)

There is no proof whatever in the plaintiff's case as to the value of Loew's stock on the date of its acquisition, namely, April 17, 1930. The only proof in the record as to the value of the stock is the price paid of $75,000,000 as of February, 1929, and the record of stock exchange transactions in small quantities in April, 1930. In February, 1929, when the valuation of $75,000,000 was placed upon this Loew's stock, it was actually selling in the market at a price lower than on April 17, 1930. The market value of small quantities of shares would not be proof of the value of this large block for the reasons hereinbefore set forth in discussing the value of the 1,600,000 shares of Fox Film stock.

A *prima facie* case has been made out to show control by General Theatres Equipment, Inc., of the affairs and the directorates of its two subsidiary corporations, Fox Film Corporation and Fox Theatres Corporation. It owned the control of the voting stock. On April seventh, when it assumed control, it put in power a board of directors friendly to it. On April seventeenth, when the transactions here involved were consummated, it shifted the board of directors as it pleased. It had in fact paid $15,000,000 for this control. In its agreement with Mr. Fox, dated April 5, 1930, General Theatres Equipment, Inc., showed its control by undertaking to obtain the performance of various acts by the directors of Fox Film Corporation and Fox Theatres Corporation. The various corporations had, in several instances, common officers. It may reasonably be inferred from the facts produced by the plaintiff, that there was at least the power to complete control by the General Theatres Equipment, Inc., over the board of directors of the other two corporations.

This is the control, however, which every majority stockholder has in every corporation. There is nothing inherently wrong in it, or in permitting the majority stockholder to vote his stock as he sees fit and to be governed by personal interest in so doing. (*Gamble* v. *Queens County Water Co.*, 123 N. Y. 91.)

The question arises as to whether or not the plaintiffs, by showing this control by General Theatres Equipment, Inc., over the other two corporations, have established sufficient to cast upon the defendants the duty of explaining the transaction and showing that it was fair, in accordance with the rule set forth in the case of *Sage* v. *Culver* (147 N. Y. 241). There the court said: " When it can fairly be gathered from all the allegations of a complaint that the officers and directors of a corporation have made use of relations of trust and confidence in order to secure or promote some selfish interest, enough is then averred to set a court of equity in motion and to require an answer from the defendants in regard to the facts. When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self interest and integrity, there is in equity a presumption against the transaction, which he is required to explain."

This rule has been followed in many instances. (*Davids* v. *Davids*, 135 App. Div. 206; *Carr* v. *Kimball*, 153 id. 825; affd., 215 N. Y. 634; *Schall* v. *Althaus*, 208 App. Div. 103.)

A majority stockholder does not become a fiduciary for other stockholders by reason merely of his ownership of stock. It is only when he steps out of his role as a stockholder, and usurps

the functions of the directors in the management and conduct of the business of the corporation, with utter disregard of the interests of the corporation and of the minority stockholders, that he is said actually to have become a fiduciary, instead of a mere stockholder. The fact that a majority stockholder is in a position by virtue of his stock holdings to elect the directors, or that he actually did elect the directors, does not of itself establish such control or domination as to make him a fiduciary for other stockholders. (*Bell* v. *Ley & Co., Inc.*, 278 Mass. 60, 72; 179 N. E. 294; *Cowell* v. *McMillin*, 177 Fed. 25, 43 [C. C. A. 9th Circuit, 1910]; *Robotham* v. *Prudential Ins. Co.*, 64 N. J. Eq. 673; 53 A. 842; *Rogers* v. *Nashville, C. & St. L. Ry.*, 91 Fed. 299, 312, 313 [C. C. A. 6th Circuit, 1898].)

In *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185) the court stated (at p. 194): " Undoubtedly no trust relation ordinarily exists between the stockholders themselves or between the stockholders and the corporation, because the stockholders, ordinarily, are strangers to the management and control of the corporation business and affairs."

In the case of *Farmers' Loan & Trust Co.* v. *N. Y. & Northern Ry. Co.* (150 N. Y. 410) it appeared that the majority stockholder actually took over the active management of the affairs of the corporation to its injury. What the court passed upon in that case is set forth at page 425 of the opinion: " It becomes necessary to determine incidentally whether a corporation, purchasing a majority of the stock of another competing corporation, may thus obtain control of its affairs, cause it to divert the income from its business, or to refuse business which would enable it to pay the interest for which it was in default, and then institute an action in equity to enforce its obligations for the purpose of obtaining control of its property at less than its value, to the injury of the minority stockholders."

The court determined this question in the negative, stating (at p. 431): " Such a course of action is clearly opposed to the true interests of the corporation itself, plainly discloses that one thus acting was not influenced by any honest desire to secure such interests, but that its action was to serve an outside purpose, regardless of consequences to the debtor company, and in a manner inconsistent with its interest and the interest of its minority stockholders."

There is clearly no proof in this case of such conduct on the part of the majority stockholder.

Whether or not the facts of this case bring it within the rule of casting the burden upon the defendants to explain the transaction

should not depend, however, upon whether we call the General Theatres Equipment, Inc., a " fiduciary " of Fox Film Corporation. A question of law should not depend upon the mere label of names. It may be true that the evidence has not established that this is a situation of a trustee dealing with himself. It is, however, clear that the transferror in this case of the 1,600,000 shares of Fox Film Corporation, sitting on one side of the table, was controlled by the same corporation which controlled the Fox Theatres Corporation which was sitting on the other side of the table and giving for that 1,600,000 shares of stock a block of 660,900 shares of stock of Loew's, Inc. Does proof of these facts alone require some explanation from the boards of directors of Fox Film Corporation, and Fox Theatres Corporation, and General Theatres Equipment, Inc., to show that the transaction was fair to all parties concerned?

I think not. Commercial transactions are common between subsidiary and parent corporations, where the stockholders of one may be different from the stockholders of the other. Indeed, it is often one of the very reasons for the creation of subsidiary corporations that arrangements mutually advantageous to both may be entered into between the two corporations. Such transactions are usually fair to both corporations. Indeed the presumption is that the directors of a corporation act fairly and honestly rather than unfairly and dishonestly. (*Rathbone* v. *Ayer*, 196 N. Y. 503, revg. 121 App. Div. 355, on dissenting opinion below.) There is no reason in precedent or principle for compelling the directors of parent and subsidiary corporations to explain every transaction, in which some stockholder alleges unfairness or fraud, merely upon the showing that there is such relationship between the two corporations.

The plaintiff must first show that such a transaction resulted in some substantial loss to the subsidiary corporation, or that some undue profit was made by the parent corporation at the expense of the subsidiary corporation, or that the acts were done to secure or promote some selfish interest of the parent corporation, or some facts on the basis of which fraud might be found on the part of the directors in consummating the transaction. A *prima facie* case showing one or more of these facts might shift the burden of explanations to the defendant directors.

There is not sufficient evidence here to fulfill these requirements. If there were, the defendant directors should be called upon to explain them. The fact that no precedent can be found labeling this relationship one of trustee and *cestui que* trust, should not stand in the way of carrying out this principle which is founded on morality in business relationships.

The evidence clearly fails to establish any unfair or oppressive action against Fox Film Corporation. The liability of directors must be established in the light of the facts which faced them at the time of their actions. In April of 1930 both Fox Film Corporation and Fox Theatres Corporation were in an extraordinary situation. The current liabilities of both companies were vastly in excess of their current assets. Judgments in excess of $4,000,000 had been obtained. Receivership proceedings were pending as to both companies. The two plans for financing the obligations of these companies which had been submitted to the directors or to the stockholders of the companies during March, 1930, had become impossible of consummation, in the one case by reason of a court injunction and in the other case by reason of expiration of time. The Bancamerica Blair group was looking for payment of their claim of approximately $11,000,000 against Fox Film Corporation and its subsidiaries. Within the course of a few days it was necessary for a plan to be conceived and carried out, which would raise $102,000,000 in cash with which to clear both corporations from debt and from the impending receiverships. Fox Film Corporation had incurred indirect obligations in connection with the purchase by Fox Theatres Corporation of Loew stock. As a result of the transaction of April seventeenth it acquired legal title to this stock. It was impossible to take the time necessary to offer the 1,600,000 shares of class A stock to the stockholders of the corporation. Immediate action was necessary; and it seems to have resulted in benefit to the Fox Film Corporation, at least as reflected in the increased market value of its shares of stock, in spite of the 200 per cent increase in the number of shares outstanding.

Standing alone, the fact that there was control in the hands of the majority stockholder does not of itself spell out fraud in the transaction. As the court said in *Continental Securities Co.* v. *Belmont* (83 Misc. 340, 352; affd., 168 App. Div. 483; affd., 222 N. Y. 673): " It may be that there was a necessity at the time of a master hand as well as a master mind for the success of the enterprise, but, standing alone, control, nomination or domination does not spell fraud."

Nor does the intermingling of directors, officers and shareholders by itself indicate fraud. (*Colby* v. *Equitable Trust Co. of N. Y.*, 124 App. Div. 262; affd., 192 N. Y. 535; *Armstrong* v. *Hayden*, 126 Misc. 786.)

The fact that the defendant members of the syndicate made an illegal profit for themselves does not indicate that there was fraud in the exchange of the securities between Fox Film Corporation and Fox Theatres Corporation. It does not tend to show

in any way that Fox Film Corporation did not receive an adequate consideration for the stock which it sold. The sole question is whether or not Fox Film Corporation suffered a loss by the transaction. It is not even contended that any defendant director of Fox Film Corporation had any personal interest in the transaction. The fact that some profits which should have been legitimately made by General Theatres Equipment, Inc., were diverted into the pockets of the members of the syndicate does not mean that the transaction between the two subsidiary corporations was unfair to the Fox Film Corporation.

This branch of the case does not seek to set aside a transaction as fraudulent; nor does it seek to recover profits illegally obtained through dealings with a corporation. It is an action for damages for a loss. The essential item of proof of loss is missing. If this motion were denied, and if the defendants were to rest without any offer of proof, the court would be unable to fix the amount of this loss with anything approaching certainty.

In the case of *Rathbone* v. *Ayer* (196 N. Y. 503, adopting the dissenting opinion of KELLOGG, J., in 121 App. Div. 355, 362) an action was brought by a trustee in bankruptcy against the directors had bought property for the corporation for $500,000 which was worth only the sum of $85,000. The plaintiffs rested without offering adequate proof of the actual value of the property. The defendant rested without offering any evidence and moved for a nonsuit. The Court of Appeals held that the complaint was properly dismissed by the trial judge, adopting the following language of Judge KELLOGG: " There is no evidence as to what the property was worth to the company for the purposes for which it acquired it, or what the defendants believed it to be worth; nor is there any evidence, as suggested by the trial justice, from which the court can find what amount of overvaluation there was. He properly holds that the plaintiff is not entitled to recover the profits the defendants made if they bought the property cheaply. The measure of their liability is their fraudulent overvaluation, if any.

" Conceding, as we must from the evidence, that the defendants believed the property was worth much more than $86,000, and that in fact it was worth over that sum to be turned over as a producing plant to a corporation, there is no evidence from which the court can determine what the actual value of the plant was; how much it was overvalued, or how much the defendants actually believed the plant was worth for the purpose for which it was turned over to the company. As the trial judge well says, those matters are left for the court to guess at. *The plaintiff was required to*

*establish his case by affirmative evidence and to show the fraudulent overvaluation as a basis for recovery.* The presumption is that the officers of a corporation perform their duties to the corporation rather than violate them, and it will not be presumed that they turned the property into the corporation at a price which wronged it." (Italics mine.)

The plaintiffs have not sustained their burden of proof. Nor have they established sufficient to shift the burden of coming forward with evidence to explain the transaction, further than already appears in the record.

This conclusion makes it unnecessary to pass upon the motions to strike out part of the evidence.

The complaint is dismissed as to all defendants.